# 96 DTA 130

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL II-BAYAMON
### PANEL ESPECIAL

MIRIAM PEREZ SUAREZ
Ex-Parte
Apelante

v.

DEPARTAMENTO DE SERVICIOS A LA FAMILIA,
PROCURADORA ESPECIAL DE RELACIONES DE FAMILIA
Apelados

---------------------------------------------------

MYRIAM SANTOS TORRES Y ANGEL LOPEZ TAVERAS

Recurridos

v.

LYDIA LEON CRUZ
Peticionaria

Núms. KLAN-96-00178/KLCE9600364

San Juan, Puerto Rico, a 30 de septiembre de 1996.

Panel especial integrado por su presidente, Juez Ortiz Carrión
y los Jueces Giménez Muñoz y Cordero.

Cordero, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Mediante orden de consolidación de fecha 20 de agosto de 1996, se ordenó la consolidación de los casos de referencia, por estar envueltos los mismos hechos y el mismo derecho. Las dos niñas menores son hijas de la misma madre y, salvo las diferentes partes que solicitan la adopción de las dos diferentes niñas, las partes en ambos casos son las mismas.

La parte apelante en el caso Núm. KLAN-96-00178 nos pide que revoquemos la sentencia del Tribunal de Primera Instancia, Sala Superior de Bayamón-Sala de Relaciones de Familia, caso civil número DEX-95-0070 (703), dictada el 18 de octubre de 1995 y archivada en autos copia de la notificación de la referida sentencia el 6 de noviembre de 1995. Por las razones que adelante exponemos, procedemos a revocar la sentencia antes mencionada.

En el caso Núm. KLCE-96-00364, la peticionaria, mediante escrito de *certiorari*, solicita se deje sin efecto la resolución emitida el 15 de marzo de 1996 por el Tribunal de Primera Instancia, Sala Superior de San Juan-Sala de Relaciones de Familia, Caso Núm. DEX-95-0206 (703). Por las razones que exponemos adelante, procedemos a expedir el auto de *certiorari* y confirmar la resolución aludida.

## I

Es necesario hacer un resumen del trasfondo de los problemas que presentan estos casos y su relación con un tercer caso que está aún pendiente ante otra sala del Tribunal de Primera Instancia, Sala Superior de Bayamón-Asuntos de Menores. Además, se han presentado tres diferentes recursos ante dos Circuitos de este Tribunal atendiendo los mismos tres diferentes paneles. Relatamos los hechos para poder entender el alto interés público que está envuelto en estos casos.

### (a) LOS HECHOS PERTINENTES

La madre biológica, la apelada en el caso Núm. KLAN-96-00178 y la peticionaria en el caso Núm. KLCE-96-00364, Lydia León Cruz, (en adelante la madre biológica), tiene hoy 35 años de edad. Vive en un residencial público con dos (2) hijos de sus cinco (5) hijos y, alegadamente con un concubino. ■ Recibe asistencia económica porque, entre otras cosas, califica por la composición de su núcleo familiar. ■ Entre los hijos de la madre biológica, está una joven de 18 años quien, se admite se independizó y no vive en el hogar materno. ■ Otro hijo tiene ahora 14 años. Por un lado la madre biológica admite que este hijo tiene *"una inhabilidad en su desarrollo a consecuencia de una sordera diagnosticada y es estudiante del Programa de Educación Especial del Departamento de Educación en la escuela Ramón Baldorioty de Castro."* ■ Por otro lado, los padres adoptantes en el caso Núm. KLAN-96-00178, Miriam Pérez Suárez y su esposo Víctor Gabriel Camacho, (en adelante los padres adoptantes) alegan, por el contrario, que este niño es retardado mental y agresivo con antecedentes de problemas con la policía. La madre biológica niega tal aseveración. Otra hija de siete (7) años de edad vive con la madre biológica y asiste también a la escuela Ramón Baldorioty de Castro.

La menor, R.K.L.C, objeto de la presente petición de adopción y disputa entre la madre biológica y los padres adoptantes en el caso Núm. KLAN-96-00178, nació el 26 de abril de 1992 y goza ahora de cuatro (4) años de edad. El 7 de mayo de 1992, varios días luego de haber nacido la menor R.K.L.C., el antiguo Departamento de Servicios Sociales (hoy Departamento de la Familia) se vio forzado a radicar una Petición de Privación de Custodia, a tenor con las disposiciones de la Ley Núm. 75 de 28 de mayo de 1975, 4 L.P.R.A. 401 *et seq.* (en adelante Ley 75), para privar a la madre biológica provisionalmente de la custodia de R.K.L.C. La referida petición se hizo por haber fracasado los

múltiples esfuerzos que se hicieron en rehabilitar a dicha madre de su problema de adicción a drogas, y de tratar que ésta aceptara a su bebé luego de insistir en que la niña se diera en adopción. El antiguo Departamento de Servicios Sociales, solicitando la custodia provisional de R.K.L.C., afirmó:

*"Madre rechazó bebé desde que fue concebido. Intentó abortarlo en dos ocasiones. Durante el embarazo planificó ofrecerlo en adopción. No tuvo cuidado prenatal. Bebé referido en Hospital porque la madre utilizó drogas durante el embarazo. Madre no quiere asumir responsabilidad por bebé. Ante esta situación, se interviene para proteger la seguridad y bienestar del bebé."*

En todo caso el Tribunal de Primera Instancia, Sala Superior de Bayamón-Asuntos de Menores, privó a la madre biológica de la custodia de R.K.L.C. y a los pocos meses de nacer, su cuido fue entregado a Miriam Pérez Suárez y Víctor Gabriel Camacho, los padres sustitutos bajo el plan de Hogar Sustituto. Estos ahora, como padres adoptantes, solicitan adoptar a R.K.L.C. Según alega la madre adoptante, el padre de R.K.L.C. es un indocumentado que fue deportado. Este hecho no ha sido refutado por la madre biológica, aunque ésta alega que el padre reconoció a R.K.L.C. *"mediante una declaración jurada"*.

El 8 de julio de 1993, la madre biológica tuvo otra niña, E.K.L., producto de otra relación consensual con un compañero que se encontraba confinado al momento del nacimiento de la niña. ■ Esta niña nació el 8 de julio de 1993 y es objeto de una petición de adopción por parte de los esposos Miriam Santos Torres y Angel López Taveras (en adelante también llamados padres adoptantes). Dicho caso se convirtió en contencioso y está ante nos bajo el número KLCE-96-00364 a petición de la madre biológica, Lydia León Cruz.

Alrededor de mes y medio de haber nacido E.K.L., el antiguo Departamento de Servicios Sociales (ahora Departamento de la Familia), intervino con la madre biológica para privarla, bajo las disposiciones de la citada Ley 75, de la custodia de la menor a consecuencia de su adicción a las drogas, por no haber cumplido con el Plan de Servicios y por su condición económica. ■ La menor E.K.L. fue entregada para cuido a los padres adoptantes en calidad de hogar sustituto cuando la niña tenía sólo tres (3) meses de nacida. Los padres adoptantes alegan estar casados entre sí y tener su propio hogar en un condominio. La madre adoptante alega ser empleada de la Policía de Puerto Rico y el padre trabaja en las Tiendas Sears. Informaron ingresos de más de $35,000 anuales.

Es necesario explicar aquí que en el caso ante nos, los padres adoptantes son casados entre sí; no pueden procrear sus propios hijos; el padre adoptante tiene 44 años de edad; trabaja en programación de computadoras y la madre adoptante tiene 34 años de edad; es tecnóloga médica; tienen casa propia e ingresos anuales en exceso de $41,000. Alegan que la menor R.K.L.C. ha estado viviendo sin interrupción con ellos como una hija desde que ella tenía solamente unos meses. La niña tiene ahora cuatro años. Alegan, por ende, que el único hogar que conoce R.K.L.C. es el hogar de los padres adoptantes.

### (b) LOS CASOS PENDIENTES Y RELACIONADOS

(1) DEX-95-0070 (703), Sala Superior de Bayamón-Sala de Relaciones de Familia; Miriam Pérez Suárez y Víctor Gabriel Camacho, Peticionarios, Ex-Parte, sobre Autorización Judicial de Adopción.

La sentencia dictada por el tribunal *a quo* en este caso es objeto del presente recurso Núm. KLAN-96-00178. Es ante este Tribunal de Primera Instancia que los padres adoptantes solicitaron adoptar la menor R.K.L.C. En su sentencia de 18 de octubre de 1995, el tribunal de instancia declaró *"No Ha Lugar"* la petición de adopción y desestimó la acción por prematura al existir el caso JC92-028 ante la Sala de Asuntos de Menores, en donde se ha ordenado reintegrar a la menor R.K.L.C. con su madre biológica, ya que a esta última no se le había privado de la patria potestad sobre la menor. No obstante, en su sentencia, el tribunal de instancia hizo la siguiente observación en su nota al calce número 3, página 7:

*"No podemos abstraer el hecho de las relaciones afectivas que han creado los peticionarios con la menor y las expectativas que han podido tener en cuanto a la adopción; por lo que el Departamento de Servicios Sociales debe ser muy cauteloso en cuanto a los trámites pendientes, conforme al mejor*

*bienestar de la menor."*

En su Resolución de 20 de diciembre de 1995, denegando reconsideración de su sentencia, el tribunal de instancia tomó conocimiento de las Leyes Núm. 8 y 9, ambas de 19 de enero de 1995, pero se reiteró en su determinación anterior. O sea, según el tribunal de instancia, como la madre biológica de la menor R.K.L.C. no ha sido privada de la patria potestad de su hija, el foro competente para determinar si la madre debe continuar con la patria potestad y la custodia de la menor es la Sala Superior de Bayamón-Asuntos de Menores, donde se ventila el caso JC-92-028.

Inconforme los padres adoptantes, recurren ante nos y señalan como error:

*"Erró el Tribunal Superior al desestimar el caso bajo la teoría de que está "inmaduro"; de que envuelve una violación al debido proceso de ley al privar de la "libertad o propiedad" a la madre biológica; y al entender que sólo si la madre "renuncia" a la patria potestad, puede el Departamento "iniciar" un proceso de adopción."*

(2) Caso Civil JC92-028, Sala Superior de Bayamón, Asuntos de Menores; *El Pueblo de Puerto Rico en interés de las menores R.K.L.C. y E.K.L.*

En este caso el Departamento de la Familia (antes Servicios Sociales) propugna la posible restitución de la menor R.K.L.C. y su hermanita menor E.I.L. con su madre biológica bajo las disposiciones de la Ley 75. El juez de instancia denegó la intervención de ambos padres adoptantes en el pleito, o sea, se les prohibió intervenir a los padres adoptantes de E.K.L., a la hermanita por parte de la madre de R.K.L.C., y a los padres adoptantes de ésta. Ambos padres adoptantes solicitaron intervención en el procedimiento con el propósito de exponer sus razones por las cuales ellos entendían que las niñas no debían regresar con la madre biológica. Al ser denegada su petición, los padres adoptantes de E.K.L. y de R.K.L.C. presentaron recurso de *certiorari* ante este Tribunal, Caso Núm. KLCE-95-0849, Circuito Regional de Bayamón. ■ Mediante sentencia de fecha 29 de diciembre de 1995, este Tribunal revocó al tribunal de instancia y ordenó se le permitiera a los padres adoptantes intervenir en el caso JC-92-028. El expediente del caso Núm. KLCE-95-0849 ante este Tribunal está ahora cerrado y archivado.

(3) Caso Civil KEX-95-0206 (703), Sala Superior de San Juan-Sala de Relaciones de Familia; Miriam Santos Torres, Angel López Taveras, Peticionarios; sobre Autorización Judicial de Adopción.

En este caso los peticionarios solicitan adoptar a E.K.L., la hermanita menor de R.K.L.C. Mediante resolución de fecha 15 de marzo de 1996, contrario a lo hecho por el Tribunal de Primera Instancia, Sala Superior de Bayamón-Sala de Relaciones de Familia, en el caso DEX-95-0070 (703), el tribunal *a quo* denegó las mociones de desestimación presentadas por el Departamento de la Familia y la madre biológica, Lydia León Cruz. En su resolución el foro *a quo* expresó:

*"Bajo los fundamentos de desestimación de la Regla 10.2 se exige que tomemos como ciertos todos los hechos bien alegados y expresados de manera clara y precisa. Ante este análisis no podemos negar que los peticionarios pudieran, luego de su día en corte, convencer al Tribunal que a pesar de la intervención del Departamento de la Familia, bajo la Ley 75, esta sala no está impedida de resolver el asunto en el análisis de dicha ley y las Leyes 8 y 9 del 19 de enero de 1995, máxime cuando estas leyes si bien establecen que el procedimiento se inicia con una petición jurada, vislumbra que se torne en contencioso y admite la intervención de cualquier parte interesada en el procedimiento. En el presente caso se han emplazado a la madre biológica y al Departamento de la Familia. En su día, tendrán la oportunidad de exponer sus respectivas posiciones."*

Inconforme con esta decisión, la madre biológica recurrió ante este Tribunal, Circuito Regional de San Juan, Panel IV, ■ mediante presentación el 19 de abril de 1996 de su escrito de *certiorari*, caso Núm. KLCE-96-00364, donde solicita se revoque la mencionada resolución y se ordene la desestimación de la Petición de Autorización Judicial de Adopción.

Como errores señala lo siguiente:

*"Erró el Tribunal Superior al determinar que no se definió el fundamento bajo el cual debía ponerse fin a la petición incoada.*

*Erró el Tribunal Superior al determinar que los argumentos de las partes no presentan un problema de falta de jurisdicción sobre la materia.*

*Erró el Tribunal Superior al determinar que los argumentos de las partes no presentan un problema sobre la legitimación de los hogares sustitutos para incoar el recurso de Autorización Judicial de Adopción en el caso de autos.*

*Erró el Tribunal Superior al determinar que a pesar de la intervención del Departamento de la Familia, bajo la Ley 75, esa sala no estaba impedida de resolver el asunto planteado en la Solicitud de Autorización Judicial de Adopción."*

## III
### a) ANALISIS DE LEYES APLICABLES

Para poder resolver los errores señalados, es necesario examinar nuestras leyes aplicables a los casos aquí señalados, o sea, la citada Ley 75; la Ley Núm. 132 de 26 de diciembre de 1993 (en adelante Ley Núm. 132); Ley Núm. 8 de 19 de enero de 1995, 8 L.P.R.A. 401 *et seq.* (Suplemento de 1996)(en adelante Ley Núm. 8); y la Ley Núm. 9 de 19 de enero de 1995, 32 L.P.R.A. 2699 *et seq.* (Suplemento de 1996)(en adelante Ley Núm. 9).

Como hemos señalado, el caso de privación de custodia comenzó con el de la menor R.K.L.C. ante el Tribunal de Primera Instancia, Sala Superior de Bayamón-Asuntos de Menores, Caso Núm. JC-92-028. Al presentarse la petición de custodia provisional de dicha menor (a los once (11) días de nacida) por el antiguo Departamento de Servicios Sociales el día 7 de mayo de 1992, estaba en pleno vigor la Ley 75.

La Exposición de Motivos de la Ley 75, en lo pertinente establece lo siguiente:

*"...el Estado Libre Asociado de Puerto Rico, en el ejercicio de su **poder de 'Parens Patriae'** reconoce su responsabilidad de velar por aquellos niños que son víctimas de maltrato o negligencia para evitar que éstos continúen sufriendo daño, una vez que se sospeche o conozca que son víctimas de las personas que tienen el deber sagrado de velar por ellos, de proveerles los servicios y la ayuda que sea necesaria para fortalecer la familia de donde éstos provienen haciendo del hogar uno seguro para los niños, y cuando esto no sea posible, ofrecerles cuidado fuera del hogar en un ambiente saludable, ya sea en forma provisional o permanente, dependiendo de las circunstancias de cada caso.*

............

***La finalidad de esta ley es lograr la protección de los niños que son víctimas del maltrato o negligencia, por tanto, la actividad del funcionario, profesional o magistrado que intervenga en estos casos será, antes que nada, de protección a los menores."*** (Enfasis nuestro.)

El propósito de la Ley 75, es ante todo, la protección de aquellos menores que son víctimas de negligencia o maltrato de sus padres. El Departamento de la Familia y cualquier otro funcionario a quien le corresponda aplicar esta ley, tiene la obligación de proteger a estos menores maltratados. A la vez, la ley le impone al Estado la obligación de brindarle servicios a los padres biológicos de estos menores con el fin de rehabilitarlos y poder devolverles la custodia del menor, de ello ser posible. Véase: *El Pueblo de Puerto Rico en interés de los menores R.P.S., M.P.S. y C.J.N.S.,* ___ D.P.R. ___ (1993), **93 J.T.S. 121**, pág. 11033.

El Artículo 29 de la Ley 75 establece que todos los casos de maltrato o negligencia que requieren la intervención del Tribunal General de Justicia, se ventilarán ante el Tribunal de Primera Instancia, Sala Superior de Asuntos de Menores. Sin embargo, el 26 de diciembre de 1993, la Asamblea Legislativa aprobó la Ley Núm. 132, enmendando el Artículo 29 de la Ley 75 (8 L.P.R.A. sec. 429)

para conferirle en dichos casos competencia a las Salas Superiores de Relaciones de Familia y facultar al Departamento de la Familia a iniciar en estos casos un proceso de privación, restricción o suspensión de la patria potestad, luego de agotar todos los esfuerzos razonables para reintegrar la familia del menor bajo los procedimientos establecidos por la Ley 75. Respecto a la fecha de vigencia de estas enmiendas, el Artículo 13 de la Ley Núm. 132, dispone expresamente que sus disposiciones sólo aplicarán a los casos presentados a partir de su aprobación. Véase nota bajo 8 L.P.R.A. sec. 402, Suplemento de 1996. Esto significa que al aprobarse la Ley Núm. 132, las Salas de Asuntos de Menores no fueron privadas de competencia sobre los casos de Ley Núm. 75 pendientes de resolución. ■

Sin embargo, el Artículo 12 de la Ley Núm. 8, al igual que el Artículo 25 de la Ley Núm. 9, ponen en vigor dichas leyes inmediatamente después de su aprobación. La Ley Núm. 8 enmendó sustancialmente las disposiciones de la Ley 75. En su declaración sobre la nueva política pública, la citada Ley Núm. 8, en su parte relevante dice:

*"Artículo 4 - Se enmienda el artículo 3 de la Ley Número 75 de 28 de mayo de 1980, según enmendada, conocida como "Ley de Protección de Menores" para que se lea como sigue:*

*"Artículo 3 [8 LPRA 403].*

*Se declara que es la política pública del Estado Libre Asociado de Puerto Rico velar porque todos los menores de Puerto Rico tengan la oportunidad de lograr un óptimo desarrollo físico, mental, emocional, espiritual y moral."*

Es, asimismo, la política pública del Estado establecer fuera de toda duda, que su interés preeminente es la protección y el bienestar del menor, y que, aun cuando el Estado tiene un deber de proveer servicios sociales de diverso tipo, para prevenir la remoción de los menores de sus hogares y de prestar servicios efectivos de rehabilitación a los padres, nunca pueden ser utilizados estos legítimos propósitos, por ninguna agencia del Estado Libre Asociado de Puerto Rico, para poner en riesgo de maltrato, abandono o exponer a experiencias nocivas a su desarrollo físico, mental, emocional o moral a ningún menor.

En igual forma, en la Exposición de Motivos de la misma Ley Núm. 8, se explica en su parte relevante:

. . . . . . . . . . . . . . . . . . . .

*"Es política pública e interés apremiante del Estado promover el bienestar y el mejor interés de los menores, y protegerlos de estar expuestos a condiciones y experiencias que sean nocivas a su desarrollo físico, emocional y moral.*

*La institución de la adopción viabiliza el establecimiento de hogares donde los niños puedan encontrar el amor, la protección y el disfrute de la vida que tanto necesitan, y a lo cual todo ser humano tiene derecho.*

*La Asamblea Legislativa entiende es imperativo flexibilizar la institución de la adopción para que ésta pueda ser utilizada ampliamente por personas que desean adoptar menores de edad. Los niños de Puerto Rico merecen tener la oportunidad de que sus vidas se desarrollen al calor de un hogar, sintiendo el amor de unos padres. La institución de la familia es el pilar principal de nuestra sociedad, por lo tanto hay que brindarle a esos niños la oportunidad de formar parte de un seno familiar.*

*Para implantar la nueva política pública en materia de adopción y de protección de los menores, para cuyo beneficio y protección se adopta esta nueva política, se hace indispensable enmendar el Código Civil en aquello que incida sobre la institución de la adopción, lo que trae como consecuencia la necesidad de revisar, además de las disposiciones relativas a la adopción, las relativas a la patria potestad y tutela, porque el padre biológico o adoptivo anterior del adoptando tendrá que ser privado de la patria potestad, y el tutor la tutela, antes o durante el procedimiento de adopción."*

Como si esto fuera poco y para asegurar que los tribunales no tuvieran dudas de la nueva política pública que están obligados a seguir, nuestros legisladores, en la Exposición de Motivos de la Ley Núm. 9, nos explican:

.....................

*"En nuestra sociedad actual se lleva a cabo por parte de nuestro gobierno una guerra franca contra la criminalidad, siendo tal tarea una de gran interés en la agenda gubernamental. En ese contexto, merecen particular atención los menores maltratados, abandonados y desamparados para los cuales el mecanismo de adopción supone el que puedan formar parte de hogares estables donde encuentren la felicidad, el amor, la protección y el desarrollo físico, sicológico, mental y moral que permita el disfrute de vida. Estos son, después de todo, sus derechos inalienables.*

*En la actualidad, ante los serios escollos y las dilaciones en tantas ocasiones innecesarias dentro del proceso de adopción se utilizan distintos mecanismos, tales como el buscar que estos niños sin hogar sean acogidos en hogares de crianza que les garanticen la protección y el cuidado a los que tienen derecho, al menos por un tiempo reducido. Tal solución, quizás buena a corto plazo, no es suficiente para enfrentar el grave problema social de niños desamparados y mucho menos para brindarle a éstos la estabilidad y la base física y emocional que les garantice el pleno disfrute de una vida sana y feliz.*

*La Asamblea Legislativa entiende que es de rigor ampliar y facilitar, en la medida de lo posible, la utilización de la institución de la adopción como mecanismo para lograr de forma óptima, que los menores e incapacitados puedan encontrar un hogar que les provea la seguridad y el amor, la comprensión y aceptación a la que tienen derecho como seres humanos.*

*De esta forma es mandatorio el expeditar y flexibilizar este mecanismo de forma tal que pueda ser utilizado más ampliamente, y de forma más rápida, por personas que deseen acoger como padres en el seno de su hogar a menores e incapacitados en estado de desamparo y abandono.*

*Así, adoptamos lo expresado por nuestro Tribunal Supremo en repetidas ocasiones en el sentido de que el fin primordial que anima todo el procedimiento de adopción, y el que sirve de norte al Tribunal para autorizar la misma, es el bienestar y conveniencia del adoptado y el principio de que la intervención del Estado sea intenía para asegurarle a éste los mejores padres.*

*Siendo lo anterior la política pública del Estado, se persigue mediante la agilización del proceso de adopción, haciéndolo a tono con la realidad actual de nuestra sociedad donde la proliferación de niños en estado de abandono, maltrato y desamparo va en aumento día a día, el fin de que al adoptado se le provea, con carácter permanente, un hogar donde se le brinde cariño, cuidado, protección, seguridad económica, social y emocional, así como lo esencial para su crecimiento y desarrollo saludable en un medio ambiente donde disfrute, sin distinción, de los mismos derechos y obligaciones que los hijos biológicos."*

En su *"Informe sobre el P. del S. 899"* de fecha 17 de octubre de 1994, ■■■ la Comisión de lo Jurídico del Senado de Puerto Rico, explicando el "Alcance de la Medida", nos dice:

*"La Ley Núm. 75 del 28 de mayo de 1980, según enmendada, establece, en su artículo 4A unos parámetros que dan excesivo peso al criterio de la rehabilitación del padre o madre maltratante sobre el interés preeminente del estado de proteger la vida, salud e integridad física y moral de los menores, principio que recoge la jurisprudencia en el caso de El Pueblo de Puerto Rico en Interés de los Menores R.P.S., M.P.S. Y C.J.N.S., 93 J.T.S. 121. Entendemos que el requisito de la "Adoption Assistance and Child Welfare Act, 42 U.S.C. sec. 67, es que el estado antes de ubicar a los menores en hogares sustitutos tiene que realizar "esfuerzos razonables" en cada caso para prevenir o eliminar la necesidad de la ubicación de los menores en tales hogares y de sacar a los menores de su hogar original, así como de posibilitar el retorno del menor a su hogar. La citada Ley 75 y la práctica administrativa vigente exceden con mucho los requisitos federales en perjuicio de los menores al exigir que se agoten todos los medios para la rehabilitación del padre del menor maltratado.*

*La presente medida tiene por objeto que el estado cumpla con la legislación federal, pero nunca en perjuicio de los menores, cuyo bienestar, salud e integridad física y moral CONSTITUYEN LA PRIMERA PRIORIDAD DEL ESTADO Y SU INTERES MAS APREMIANTE. Toda ley, reglamento o jurisprudencia que contravenga esta política pública QUEDA DEROGADA CON LA APROBACION DE ESTA MEDIDA".* (Enfasis en el original.)

Estas mismas palabras fueron adoptadas en su totalidad por la Comisión de lo Jurídico Civil de la Cámara de Representantes, en las páginas 22 y 23, de su informe a la Cámara de fecha 8 de diciembre de 1994 con relación al mencionado Proyecto del Senado 899.

¡Pero aún más! El *"Informe del P. de la C. 1607",* emitido por la Comisión de lo Jurídico del Senado, explicando en la página 11 el *"Alcance de la Medida",* dice:

*"Las vistas públicas realizadas para la consideración del P. de la C. 703, antecesor inmediato al P. del S. 899, produjeron una cantera de información sobre la situación real de los niños maltratados y abandonados en Puerto Rico que demostró la necesidad de revisar la normativa con relación a las áreas de adopción, patria potestad, maltrato de menores, a la política pública de la agencia administrativa que administra estos asuntos, el Departamento de Servicios Sociales, y a los procedimientos seguidos en estos casos.*

*Los testimonios verdaderamente dramáticos que se presentaron durante las vistas públicas del P. de la C. 703 convencieron a los miembros de la Comisión de la necesidad imperiosa de efectuar no un mero cambio en la legislación mediante ciertas enmiendas a cuerpos jurídicos vigentes, ES NECESARIO REALIZAR UN CAMBIO FUNDAMENTAL EN LA POLITICA PUBLICA DEL ESTADO.*

*LA NUEVA POLITICA PUBLICA QUE SE ESTABLECE CON ESTA MEDIDA, Y SU COMPAÑERA EL P. DEL S. 899, ES QUE EL BIENESTAR DEL MENOR CONSTITUYE EL INTERES APREMIANTE PREDOMINANTE DEL ESTADO, Y CUALQUIER DUDA O CONTROVERSIA DEBE RESOLVERSE A FAVOR DEL MENOR, y ni las conveniencias administrativas, ni la necesidad de obtener fondos federales por parte del Estado pueden prevalecer sobre este principio."* (Enfasis en el original.)

En sus comentarios sobre las enmiendas al Codigo Civil, sigue diciendo el informe en las páginas 13 y 14:

El nuevo artículo 166A del Código Civil contiene las causales de privación de la patria potestad. Siendo este [sic] el situ de la normativa para la privación de la patria potestad, se consolidan en el mismo todas las causales del código actual y de la Ley de Protección de Menores. Al mismo tiempo se mejora la redacción para adecuarla a un cuerpo legal como lo es el Código Civil y se revisa para adecuarla a la nueva política pública establecida de hacer prevalecer el interés del menor sobre toda otra consideración.

En particular, este artículo armoniza el interés del Estado de que se realice un esfuerzo razonable por mantener a un menor en su hogar biológico, interés que recoge la *"Adoption Assistance and Child Welfare Act of 1980"* y la Ley de Protección de Menores, *supra,* y el interés preeminente de proteger al menor. La nueva norma es que el Estado debe *"ofrecer y brindar efectivamente un plan de servicios sociales para evitar que un menor sea retirado de su hogar o permitir que un menor sea devuelto al mismo, pero estos fines loables deben ceder primacía al interés de proteger el bienestar y la salud física, mental y emocional del menor y toda duda debe ser resuelta a favor del menor."* (Enfasis en el original.)

El nuevo artículo 166B del Código dispone ciertas condiciones que, de presentes, autorizan al tribunal a privar persona de la patria potestad.

Sin necesariamente determinar como *"culpable"* a un padre o madres [sic] por el hecho de sufrir de la condición de adicción al alcohol o a una sustancia controlada, estas condiciones pueden de tal forma afectar a los menores, que para protegerlos resulta necesario privar al padre o madre de la patria potestad, ya que pueden incapacitarlos para proveerle a sus hijos un mínimo de cuidados físicos,

mentales y emocionales. El padre o madre contra quien se inste una acción de privación de patria potestad no se enfrentará a un hecho consumado, ya que la medida establece que si el padre o madre demuestra que puede atender su situación en un tiempo razonable, no será privado de la patria potestad. No obstante, el tribunal tendrá que tomar en consideración el tipo de condición, la edad del menor, la edad del padre o madre y la totalidad de las circunstancias del hogar del menor para tomar la acción final de privar o no de la patria potestad al padre o la madre. No se fija un período de tiempo, ni en días, ni en meses, para que el tribunal pueda, caso a caso, determinar lo que proceda, teniendo siempre en cuenta que el interés preeminente es la protección del menor.

Aun cuando existe una fuerte política pública de promover la rehabilitación de los adictos, **no puede utilizarse a un menor como mero instrumento para la rehabilitación del padre;** el menor tiene derechos civiles también, y el primero es su derecho a la vida, que incluye no sólo su integridad física, sino la sicológica y moral. (Enfasis en el original.)

En sus comentarios sobre las enmiendas a la Ley de Protección de Menores, dice el informe en la página 15:

*"El artículo 4A de la medida vigente contiene la norma de privación de la custodia de menores "luego de haberse agotado todos los esfuerzos razonables de integrar la familia."*

Esta norma, y la decisión en el caso de *El Pueblo de Puerto Rico en Interés de los Menores R.P.S.*, **93 J.T.S. 121**, en conjunto con los reglamentos del Departamento de Servicios Sociales, han producido resultados desastrosos pues funcionarios del departamento se han sentido en la obligación de devolver menores a sus hogares biológicos en contra de los mejores intereses de los menores, sólo por cumplir con estas normas y la alegadamente existente en la ley federal antes citada. Uno de los testimonios vertidos en vistas públicas relató cómo una menor, que había sido violada por el compañero consensual de su madre, fue devuelta a su casa donde fue violada después de su retorno. El final de esta infortunada menor fue el suicidio.

Es la política pública establecida en esta medida que se eviten a toda costa estas tragedias mediante la puesta en marcha de la nueva política pública: **EL MENOR ES PRIMERO.** Si el Estado, ya sea el Departamento de Servicios Sociales, ya [sic] el tribunal puede equivocarse, como administrados por seres humanos, que se equivoque del lado del menor, y no del padre o de la agencia administrativa. (Enfasis en el original.)

Finalmente en la página 16 del informe se nos dice claramente:

*"El artículo 9 de la medida enmienda el artículo 32 de la Ley de Protección de Menores para incorporar la nueva política establecida en esta medida."*

En el párrafo (d) contiene la norma de *"esfuerzos razonables para preservar la unidad familiar"*, pero establece un balance más razonable en la aplicación de esta norma. Esta redefinición de la norma, entendemos, conforma plenamente con la ley federal, *supra*, y elimina los riesgos, y los daños, a los menores.

Por otra parte, la nueva política pública está enfáticamente enunciada en dos párrafos que constituyen un *"mensaje claro"* del legislador al juez:

*"**En ningún caso** el tribunal autorizará **el regreso de un menor** al hogar de sus padres biológicos, o a otro hogar, si con esta acción se **pone en riesgo el bienestar y la salud física, mental o emocional del menor.***

*En todo caso decidido al amparo de esta ley, el **tribunal deberá fallar a favor del menor, en caso de conflicto entre los intereses del menor, sus padres, tutores o custodios o el Estado."*** (Enfasis en el original.)

Queda claro que la política pública jurisprudencial expresada por la doctrina del *"balance de intereses"*, al aplicarse en estos casos, el balance debe inclinarse a favor de los intereses de los menores.

Hemos hecho este extenso análisis, citando textualmente la ley y su historial, para hacer clave el interés apremiante que tiene el Estado para velar por la salud y bienestar de los menores. Queda relegado a un segundo lugar, aunque importante, la rehabilitación de los padres, inclusive los planes de rehabilitación en casos pendientes ante los tribunales, si al implementar dichos planes se pone en riesgo la seguridad mental y emocional de los menores y su cuido físico y/o moral. De haber duda sobre si el plan de rehabilitación puede lesionar o poner en riesgo los mejores intereses de los menores, la duda debe resolverse a favor del bienestar de los menores.

Los tribunales al igual que las varias agencias gubernamentales, específicamente el Departamento de la Familia y el Departamento de Justicia, están obligados a seguir esta política pública que esta en vigor desde el 19 de enero de 1995, es decir, antes de la presentación de los dos casos de adopción que aquí nos ocupa.

## (b) PARAMETROS PARA INTERPRETAR LAS LEYES

Constituye un principio cardinal de hermenéutica el que la interpretación de una disposición específica de una ley requiere que se considere el estatuto en su totalidad, como parte de un todo coherente y armonioso. *Zambrana Maldonado v. Estado Libre Asociado de P.R.*, ___ D.P.R.___ (1992), **92 J.T.S. 12**, pág. 9171. La ley en cuestión debe ser examinada y comparada en sus partes, de modo que se hagan consistentes y surtan efecto. *Id.* A tales fines, deben interpretarse las distintas disposiciones o secciones del estatuto, las unas en relación con las otras. *Id.* Al examinar un estatuto, el juzgador está obligado a armonizar, en lo posible, todas las disposiciones del estatuto a los fines de lograr un resultado sensato, lógico y razonable. *Colegio de Ingenieros y Agrimensores de Puerto Rico v. Autoridad de Acueductos y Alcantarillados,* ___ D.P.R ___ (1992), **92 J.T.S. 137**, pág. 10017. Los estatutos deben ser interpretados y aplicados conforme al propósito social que los inspira, sin desvincularlos de la realidad y el problema humano que pretenden resolver. *Id.; Pueblo v. Pizarro Solís,* ___ D.P.R. ___ (1992), **92 J.T.S. 10**, pág. 9154. Véase, además, *García Pagán v. Shiley Caribbean.*,122 D.P.R. 193, 208-209 (1988).

La razonabilidad de un estatuto se determina tomando en consideración principalmente la sustancialidad del interés público promovido por el mismo y la dimensión del menoscabo ocasionado por su aplicación retroactiva; mientras más grave sea el mal social que el estatuto intenta remediar, más grande es el interés público envuelto, y por lo tanto, mayor justificación para su aplicación retroactiva. *Vélez v. Srio. de Justicia,* 115 D.P.R. 533, 542 (1984); *Warner Lambert Co. v. Tribunal Superior,* 101 D.P.R. 378, 396 (1973).

Si existe un conflicto irreconciliable entre una nueva disposición y estatutos previos de igual rango referentes a la misma materia, la nueva disposición será la que controle o prevalezca, ya que constituye la última expresión de la legislatura. *Díaz v. Srio. de Hacienda,* 114 D.P.R. 865, 874 (1983); J.G. Sutherland, *Statutes and Statutory Construction,* 3ra ed., Chicago, Callaghan and Company, 1943, Vol. 2. Sec. 5201, pág. 532.

La bifurcación o fragmentación de los procedimientos es indeseable, y se propende por el contrario a la máxima expansión del ambito de la acción civil trayendo a su núcleo los elementos dispersos de reclamaciones, partes y remedios en orden a la adjudicación integral de la controversia. *Diez Rodríguez v. Guzmán Ruiz,* 108 D.P.R. 371, 378 (1979).

El orden procesal rechaza la adjudicación por dos tribunales de una cuestión esencialmente indivisible. Id.

## IV

Comenzamos por decir que el bienestar de los menores en estos casos, la custodia y patria potestad sobre éstos, constituye una cuestión esencialmente indivisible. Ante el análisis arriba realizado, nos corresponde resolver la controversia sobre la competencia de la Sala de Asuntos de Menores, *vis a vis,* la de Sala de Relaciones de Familia.

Es obvio que tres (3) diferentes salas del Tribunal de Primera Instancia no pueden continuar viendo un caso donde están envueltas las mismas partes, los mismos hechos, el mismo derecho y en el cual

las partes solicitan un mismo remedio. Además, ha pesado en extremo sobre nuestro ánimo judicial el escrito de la Procuradora de Menores, en el cual nos solicita se consoliden todos los casos pendientes ante el Tribunal de Primera Instancia. Obviamente, tal consolidación evitaría decisiones conflictivas entre las distintas salas, cosa que ya ha ocurrido, serviría el propósito de economía procesal y evitaría la bifurcación y fragmentación de los procedimientos. Regla 1, Reglas de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, R. 1. Como hemos señalado, nuestro orden procesal rechaza la adjudicación de cuestiones esencialmente indivisibles como lo es la capacidad de los padres biológicos para continuar con la custodia y la patria potestad de sus hijos menores, el bienestar de éstos y el proceso de adopción. *Diez Rodríguez v. Guzmán Ruiz, supra*, pág. 378 (1979).

Ahora bien, ¿cuál de las tres salas del Tribunal de Primera Instancia debe adquirir competencia sobre los tres pleitos, convertidos todos en contenciosos, entre las mismas partes? Para resolver esta disputa, que es uno de los errores señalados, buscamos la intención del legislador, según las disposiciones de la Ley Núm. 132, la Ley Núm. 8 y la Ley Núm. 9. Tomando en consideración el interés público envuelto, el mal social que los estatutos intentan remediar y la última expresión de la legislatura, concluimos que la Sala de Relaciones de Familia es la sala indicada para resolver todos los casos aquí relacionados. Nos explicamos.

Es notable que bajo el Artículo 8 de la Ley Núm. 132, 8 L.P.R.A. sec. 429 (Suplemento de 1996), la competencia para intervenir con casos de maltrato o negligencia en el cuido de menores fue trasladada de la Sala de Asuntos de Menores a la Sala de Relaciones de Familia, Tribunal Superior. Es cierto que bajo el Artículo 13, Ley Núm. 132, se dispuso que dicho artículo no será de aplicación a los casos pendientes de resolución en el tribunal al momento de aprobarse la ley. Sin embargo, se dispuso que la Ley Núm. 132 aplicará a los casos que sean presentados a partir de su aprobación, o sea, luego del 26 de diciembre de 1993. Pero es importante, y hacemos hincapié, que en cuanto a la vigencia de las Leyes Núm. 8 y 9, éstas comenzaron a regir inmediatamente después de su aprobación el 19 de enero de 1995. Por lo tanto, vemos que bajo la Ley Núm. 132 el claro mandato del legislador es que los casos de maltrato y negligencia de menores fuesen atendidos por las Salas de Relaciones de Familia, salvo aquellos casos que estaban pendientes de resolución al momento de aprobarse la referida ley. Vemos también que en el caso JC92-028, ya la Sala de Menores había resuelto privar provisionalmente a la madre biológica de la custodia de E.K.L. el 11 de octubre de 1993. Previamente el 6 de julio de 1992, se le había privado provisionalmente a la madre de la custodia de R.K.L.C. ▮ O sea, que ya la función de la Sala de Asuntos de Menores de adjudicar la controversia sobre la custodia provisional de los menores se había resuelto mediante resolución al efecto. No es hasta el 13 de febrero de 1995, luego de estar en vigor la Leyes Núms. 132, 8 y 9, que el Departamento de la Familia le presenta a dicha Sala de Menores, para revisión, el plan de rehabilitación de la madre biológica. Dicho plan incluyó un programa donde podrían regresar los niños a la casa de la madre biológica mediante visitas supervisadas como parte del proceso de rehabilitación. Nótese que ya para esa fecha estaba en vigor la nueva política pública de velar primordialmente por el bienestar físico y emocional de los menores, por encima de cualquier plan de rehabilitación de los padres, por más loable que fuese la intención de rehabilitar. Además, ya estaba en vigor la Ley Núm. 132 concediéndole competencia a la Sala de Relaciones de Familia.

Como hemos señalado, al estar en vigor las Leyes Núm. 132, 8 y 9, se presentó el plan revisado de rehabilitación ante la Sala de Asuntos de Menores. Al poco tiempo también se presentaron ante dos diferentes Salas de Relaciones de Familia, las dos peticiones de adopción de los menores que aquí nos concierne.

No cabe duda que **antes** de la Ley Núm. 132, la Sala de Asuntos de Menores tenía competencia sobre estos asuntos y se puede interpretar que el caso JC92-028 era un caso que aun estaba *"pendiente de resolución."* Pero, dado el hecho de que la Ley Núm. 132 le concedió a la Sala de Relaciones de Familia competencia para atender los casos de custodia, maltrato y negligencia en el cuido de menores, al igual que la facultó para atender casos que envuelven patria potestad y adopción, nos vemos obligados a considerar esa última expresión de nuesta legislatura examinando todos los estatutos relevantes en su totalidad como parte de un todo coherente y armonioso. Zambrana Maldonado, *supra.*

Por lo tanto, para nosotros es claro que el Tribunal de Primera Instancia, Sala Superior de

Relaciones de Familia, es la sala con competencia para ver aquellos casos, como los de epígrafe, en los cuales esta envuelto:

> *"(a) un caso donde se presentó un plan de rehabilitación, y el cual se ha convertido en contencioso, y donde se debe determinar la capacidad física y emocional de la madre biológica antes de ésta poder recuperar la custodia de los niños menores, habiendo comenzado dicho procedimiento luego de ya estar en vigor las Leyes Núms. 132, 8 y 9;*

> *(b) una controversia donde se cuestiona si se debe privar a la madre biológica de la patria potestad de los menores, habiendo comenzado dicha controversia **luego** de ya estar en vigor las Leyes Núms. 132, 8 y 9;*

> *(c) un caso de adopción que se ha convertido en contencioso, en el cual hay oposición a la adopción, habiendo comenzado dicho caso **luego** de ya estar en vigor las Leyes Núms. 132, 8 y 9."*

Debemos recordar, además, que en la Exposición de Motivos de la Ley Núm. 8 se nos explica que se puede privar a los padres de la patria potestad antes **o durante** el procedimiento de adopción. Igual nos dice, pero en forma mas específica, la Ley Núm. 9, Artículo 613E, que enmendó la Ley de Procedimientos Legales Especiales, 32 L.P.RA. sec. 2699h (Suplemento de 1996).

Por las razones antes expuestas, al comenzar la petición de adopción ante la Sala de Relaciones de Familia, el Departamento de la Familia debió haber solicitado la consolidación de todos los casos ante esa sala, que es la que tiene jurisdicción y competencia para resolver dentro de un sólo caso consolidado todas las controversias. O sea, que es el Tribunal de Primera Instancia-Sala de Relaciones de Familia, quien puede dilucidar el plan de rehabilitación, el impacto de dicho plan sobre el bienestar de los menores, la procedencia de la privación de la patria potestad de la madre biológica y la procedencia del procedimiento de adopción. La sala con jurisdicción y competencia para atender todo lo relacionado con los tres casos aquí mencionados lo era, y lo es, el Tribunal de Primera Instancia, Sala Superior de Bayamón-Relaciones de Familia, que atiende el caso DEX-95-0070 (703), por ser esta la sala donde se presentó el primer caso de adopción. Aunque es cierto que el caso ante la Sala de Asuntos de Menores es el caso más antiguo, dicha sala no tiene competencia ni jurisdicción para atender casos de adopción. Por lo tanto, el caso más antiguo ante una sala con competencia y jurisdicción para resolver todas las controversias que estos casos presentan, lo es el Tribunal de Primera Instancia, Sala Superior de Bayamón-Relaciones de Familia.

Siendo esto así, erro dicho foro al desestimar la petición de adopción y en consecuencia, revocamos la sentencia emitida. El caso ante dicho foro no era uno prematuro; al contrario, ya ha pasado tiempo más que suficiente para determinar el futuro bienestar de las niñas menores que es, de acuerdo a la nueva política pública, el interés primordial del gobierno.

En igual forma y por las mismas razones arriba expuestas, no cometió error el foro *a quo* en el caso KEX-95-0206 (703) al denegar la moción de desestimación. Esa Sala de Relaciones de Familia tiene competencia para resolver todo lo relacionado con la menor y adjudicar la controversia sobre la patria potestad y la adopción. Se confirma la resolución de ese foro. No obstante lo antes dicho, este caso debe ser consolidado con el caso civil número DEX-95-0070 (703) ante la Sala Superior de Bayamón-Relaciones de Familia.

Los padres sustitutos no están impedidos de presentar una petición de adopción pues hemos estudiado las disposiciones de la Ley 75 y no encontramos ninguna disposición que le prohiba a dichos padres sustitutos convertirse en padres adoptantes. Al contrario, sería ilógico pensar que la ley le prohibe a unos padres sustitutos ser padres adoptantes cuando éstos han tenido bajo su cuido y custodia un niño por años, dándole amor, cariño, enseñanza y dirección. Igualmente es ilógico pensar que unos padres sustitutos, a quienes se les ha entregado el cuido y custodia de un menor, no tiene legitimación activa *("standing")* para iniciar o intervenir en un proceso legal que es para la protección y bienestar del menor bajo su custodia. Nada en la ley prohibe que unos padres sustitutos busquen darle el mejor bienestar al menor mediante los procedimientos legales a su alcance.

Hacemos otras observaciones pertinentes. No entendemos cómo, luego de tan claro precepto

expresado en las Leyes Núms. 8 y 9, puede el Tribunal de Primera Instancia permitir un plan de rehabilitación donde se utilizan a los menores como parte del proceso, sin antes celebrar una vista y analizar mediante peritos el impacto físico y emocional, si alguno, que pudiese tener ese plan de rehabilitación sobre los niños. De existir duda sobre si los niños serían afectados al éstos ser reintegrados con la madre biológica, era el deber de dicho Tribunal resolver esa duda a favor de los niños. Ese es el mandato de la nueva política pública. No podría ser de otra manera.

Como ya reseñamos anteriormente, nuestros legisladores han advertido cómo en Puerto Rico hemos extendido y ampliado ciertos criterios de los programas de rehabilitación de los padres maltratantes, requeridos por legislación federal (Adoption Assistance and Child Welfare Act, 42 U.S.C. sec. 671). En múltiples ocasiones esta extensión se ha hecho en contra de los mejores intereses de los menores no empece ser interés preeminente del Estado el bienestar de nuestros niños.

Es por eso, y con el establecimiento de esta clara y nueva política pública asentada en las referidas leyes 8, 9 y 132, que se debe fijar sin lugar a dudas que no se pondrá en riesgo la seguridad de los niños en Puerto Rico por cumplir alguna agencia o persona del gobierno estatal con exigencias de alguna ley federal a cambio de obtener fondos federales. ¡El bienestar de nuestros niños no se pone a la venta ni tiene precio! Además, debemos recordar que los niños también tienen derechos civiles protegidos tanto por nuestra Constitución como por la federal. Por ende, podrían advenir serias dudas sobre la constitucionalidad de cualquier ley federal o estatal que viole o ponga en riesgo los derechos constitucionales de nuestros niños.

También hay que observar las normas sobre patria potestad y custodia y el bienestar de los menores, según dictaminado por nuestro Tribunal Supremo hace décadas. En *Rodríguez v. Torres*, 80 D.P.R. 778, 780-781 (1958), nuestro Tribunal Supremo dijo:

*"El concepto "bienestar del menor" incluye diversos factores de orden moral, síquico, cultural y económico. Los intereses humanos envueltos en la determinación de la custodia de menores no permiten que se resuelva un problema de tanta categoría mediante la mera aplicación del concepto jurídico de la patria potestad. La obligación judicial de hacer conclusiones específicas sobre los diversos factores comprendidos en el bienestar del menor, no puede dejarse a merced de las admisiones que puedan hacer las partes o sus abogados, durante la vista del caso.*

*De acuerdo con la sicología infantil, [antes de los cinco años], estos años resultan ser los más decisivos para la formación del carácter del niño. No sabemos si pasarlos ahora a otra aura familiar perjudicaría el desarrollo posterior de su personalidad: Kovacs v. Brewer, 356 U.S. 604 (Frankfurter, disidente) (1958), cita precisa a la pág. 610. Entendemos, asimismo, que el tribunal debe proceder a determinar por todos los medios a su alcance, incluyendo el nombramiento de un perito por el propio tribunal, si la recuperación emocional de la madre ha sido total y definitiva. No nos parece suficiente, en este sentido, la afirmación de la madre y la observación del Juez durante la vista del caso. Por supuesto, al decidir nuevamente sobre la custodia de dichos menores, se deberá tener en cuenta la totalidad de las circunstancias según éstas existan al momento de resolver la cuestión."* (Enfasis nuestro.)

También, en *Feliciano v. Guzmán*, 102 D.P.R. 246, 249 (1974), otro caso que trata sobre custodia, nos dice nuestro Tribunal Supremo que antes de devolver la custodia de un menor:

*"[d]ebe investigarse además, en forma exhaustiva, el marco hogareño de cada una de las partes así como los ambientes que cada uno ofrece a la niña y, teniendo por miras por sobre toda otra consideración garantizar su bienestar, resolver la controversia."*

Como en el plan de rehabilitación de la madre biológica se están utilizando a los menores como posibles instrumentos del plan, es necesario, antes de continuar con dicho plan, que el tribunal con competencia sobre la materia señale una vista para: (a) determinar el impacto emocional y físico, si alguno, que haya tenido, o que pudiese tener sobre los menores el regreso con su madre biológica; (b) determinar por todos los medios a su alcance, incluyendo el uso de peritos, si la recuperación del problema de la madre biológica de adicción a las drogas ha sido *"total y definitiva"*; ■ y (c) determinar el ambiente y *"marco hogareño"* que mejor existe para los menores, si el que ofrece la madre biológica o el de los padres adoptantes.

De encontrarse en riesgo el bienestar de los menores, deberá suspenderse el plan de rehabilitación hasta tanto se elimine el peligro existente sobre éstos. De existir peligro o riesgo a los menores con el regreso de éstos con su madre biológica, el foro *a quo* deberá determinar si es aconsejable la procedencia de los procedimientos de adopción y el derecho a la patria potestad que ahora le corresponde a la madre biológica.

Por las razones antes expuestas:

(1) Se revoca la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón-Sala de Relaciones de Familia, en el caso DEX-95-0070 (703) de fecha 18 de octubre de 1995 y archivada en autos copia de la notificación de la sentencia el 6 de noviembre de 1995;

(2) Se confirma la Resolución dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan-Sala de Relaciones de Familia, en el caso KEX-95-0206 (703) de fecha 15 de marzo de 1996 y archivada en autos copia de la notificación de la resolución el 20 de marzo de 1996;

(3) Se ordena el traslado del caso KEX-95-0206 de San Juan al Tribunal de Primera Instancia, Sala Superior de Bayamón-Sala de Relaciones de Familia, para que el mismo sea consolidado con el caso DEX-95-0070 (703);

(4) Se ordena al Tribunal de Primera Instancia, Sala Superior de Bayamón-Relaciones de Familia, que consolide el caso JC-92-028 de la Sala Superior de Bayamón-Asuntos de Menores con los otros dos ( 2) casos arriba señalados.

(5) El tribunal de instancia, una vez estén todos los casos consolidados, deberá ordenar la celebración de una reunión en cámara con los abogados de las partes, para que éstos puedan examinar y estudiar todos los informes de los médicos, psicólogos, psiquiátras y trabajadores sociales que obren en el expediente del tribunal, y los que puedan tener cualquiera de las partes. Las partes, en esa ocasión y luego de examinar, estudiar y tomar nota de los informes periciales, podrán solicitar copia de los mismos. De existir alguna objeción sobre la entrega de cualquier informe pericial, el tribunal deberá resolver dicha objeción conforme a derecho. En esa forma se acelera el proceso de descubrimiento de prueba. Luego de los abogados estudiar y examinar en cámara los informes, el tribunal podrá emitir las órdenes necesarias para asegurar la confidencialidad de los mismos.

(6) Se ordena al Tribunal de Primera Instancia, Sala Superior de Bayamón-Sala de Relaciones de Familia, a continuar con los procedimientos, comenzando de novo, y que de manera integral resuelva las controversias determinantes, principalmente el impacto, si alguno, que pudiese tener el plan de rehabilitación sobre los menores. Sobre este aspecto, deberán cesar de inmediato las visitas supervisadas hasta que el tribunal pueda hacer sus determinaciones en cuanto el efecto sobre los menores, si alguno, que hayan tenido dichas visitas, y el efecto, si alguno, que podrían tener las visitas futuras, teniendo en cuenta la nueva política pública establecida en las Leyes Núms. 8 y 9 y en la jurisprudencia que no haya sido derogada por el cambio de la política pública.

(7) El Tribunal de Primera Instancia deberá darle prioridad a la resolución de los tres casos.

(8) Este Tribunal, bajo su poder supervisor, mantendrá jurisdicción sobre los casos consolidados. No obstante, se ordena el cierre y archivo de nuestros casos para propósitos de estadísticas únicamente. Sin embargo, de tener que volver en alzada cualquiera de las partes, lo harán utilizando este mismo caso y este mismo epígrafe.

(9) Se ordena a la secretaría de este Tribunal a enviarle de inmediato copia de esta sentencia a los abogados de récord y a las secretarías del Tribunal de Primera Instancia, Sala Superior de San Juan y de Bayamón por mensajero especial.

El Juez Ortiz Carrión emitió voto disidente con opinión escrita.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.

**ESCOLIOS 96 DTA 130**

1. La madre biológica ha tenido en total cinco (5) hijos, todos productos de diferentes relaciones consensuales.

2. Este Tribunal celebró audiencia el 10 de abril de 1996. Durante la vista, la representación legal de la madre biológica aclaró que la suma que se recibía por concepto de asistencia económica dependía del número de personas que componía el núcleo familiar. Entre más hijos, más ayuda económica recibe.

3. Alegato de la parte apelada presentado el 17 de abril de 1996, pág. 2.

4. *Id.*

5. Núm. KLAN-96-00178, Alegato del Departamento de la Familia titulado *"Oposición A Recurso De Apelación"* de fecha 16 de abril de 1996, pág. 2.

6. *Id.*, pág. 2.

7. Panel compuesto por su presidente, el Juez Gierbolini y los Jueces Salas Soler y Giménez Muñoz.

8. Panel compuesto por su presidenta, la Jueza Alfonso de Cumpiano y los Jueces Broco Oliveras y Miranda De Hostos.

9. Posteriormente, discutiremos el impacto de los casos pendientes ante la Sala Superior-Asuntos de Menores, que se convierten en casos contenciosos.

10. El Proyecto del Senado 899 se convirtió en la Ley Núm. 9.

11. El Proyecto del Senado 1607 se convirtió en la Ley Núm. 8.

12. Hemos tomado conocimiento judicial del contenido del expediente JC92-028 ante el Tribunal de Primera Instancia, Sala Superior de Bayamón-Sala de Asuntos de Menores. Regla 11, Reglas de Evidencia de 1979, 32 L.P.R.A. Ap. IV, R. 11; *Asociación de Periodistas v. González*, ___ D.P.R. ___ (1991), **91 J.T.S. 4**, págs. 8287-8288.

13. Además de lo que puedan decir los peritos para determinar si la madre biológica ha superado su problema de drogas, el tribunal debe considerar si ella ha comenzado y continuado con un programa de rehabilitación utilizando servicios de apoyo *("support groups")*, tales como, programas de terapias psicológicas y si ha participado continuamente con grupos tales como, Narcóticos Anónimos.

14. En esa forma un sólo panel podrá darle continuidad al caso evitando así decisiones conflictivas.

## VOTO DISIDENTE DEL JUEZ DE APELACIONES SR. ORTIZ CARRION — 96 DTA 130

San Juan, Puerto Rico, a 1 de octubre de 1996

Considero que la mayoría del panel incurre en un error de derecho al no seguir el criterio del Departamento de la Familia en el trámite judicial de los pleitos consolidados del título. El Departamento de la Familia es el organismo administrativo especializado, a quien la Asamblea Legislativa le ha encomendado la representación del *parens patriae* del Estado en la administración de las leyes cuya interpretación está en controversia en este caso. Los tribunales deben concederle la máxima deferencia a la interpretación que hace la agencia del Estado a quien la Asamblea Legislativa le ha encomendado la administración de una ley.

# I

Los pleitos del título tratan sobre el caso de dos menores R.K.L.C. y E.K.L., quienes están bajo la custodia provisional del Departamento de la Familia, el cual los ubicó en respectivos hogares de crianza mientras se efectúa el proceso de rehabilitación de su madre biológica, la señora Lydia León Cruz, bajo la supervisión del Tribunal de Primera Instancia, Sala Superior de Bayamón, Asuntos de Menores, caso JC-92-028, mediante el procedimiento establecido por la Ley de Protección de Menores, Núm. 75 de 28 de mayo de 1980, según enmendada, 8 L.P.R.A. sec. 401 *et seq.* Los procedimientos que se efectúan en el caso JC-92028 ante la Sala de Asuntos de Menores, aún no han concluido, ni han sido consolidados en instancia o en apelación con los pleitos del título, por lo que la decisión de la mayoría de este panel, constituye una intervención colateral con un procedimiento judicial cuyos autos no están ante la consideración de este Tribunal.

La controversia en los pleitos del título, se suscita cuando Myriam Pérez Suárez y Víctor Gabriel Camacho, y Miriam Santos Torres y Angel López Taveras, a quienes el Departamento de la Familia les encomendó el cuido de los referidos menores, presentaron sendas peticiones ante las salas de San Juan y Bayamón del Tribunal de Primera Instancia en las cuales solicitan la privación de la patria potestad de la señora Lydia León Cruz y la adopción de los menores mediante el procedimiento, establecido por las Leyes Núm. 8 y 9 de 19 de enero de 1995, 31 L.P.R.A. secs. 531, *et seq.*

En el primer caso, la Sala Superior de Bayamón de Relaciones de Familia, desestimó la petición de Myriam Pérez Suárez y Victor Gabriel Camacho al concluir que en el caso JC-92-028, ante la Sala de Asuntos de Menores de Bayamón, se está tramitando la restitución de la custodia permanente de R.K.L.C. a su madre biológica, señora Lydia León Cruz y cualquier intervención relativa a la adopción sería prematura. En el segundo caso, la Sala Superior de Relaciones de Familia, se negó a desestimar la petición de adopción de E.K.L. y decidió considerar las solicitudes que le fueron presentadas por los esposos Miriam Santos Torres y Angel López Taveras.

Ambos dictámenes fueron apelados ante este Tribunal, quien procedió a consolidarlos. El Departamento de Familia ha comparecido ante este Tribunal para solicitar que se confirme a la Sala Superior de Bayamón de Relaciones de Familia y se revoque a la Sala Superior de San Juan de Relaciones de Familia, favoreciendo que se desestimen ambas peticiones de adopción por considerarlas prematuras mientras se esté tramitando el caso JC-92-028, para la restitución de la custodia permanente a la madre biológica de ambos menores.

Contrario a la mayoría, concurrimos con el Departamento de la Familia quien sostiene su postura basándose en una interpretación literal del texto de las Leyes Núm. 75 de 28 de mayo de 1980; Núm. 132 de 26 de diciembre de 1993; Núm. 8 y 9 de 19 de enero de 1995 y basándose en los principios básicos de consolidación y competencia que deben aplicar los tribunales en la adjudicación de los pleitos ante su consideración.

# II
## -1-

La Exposición de Motivos de la Ley Núm. 75 del 28 de mayo de 1980, en lo pertinente establece lo siguiente:

*"... el Estado Libre Asociado de Puerto Rico, en el ejercicio de su poder de 'Parens Patriae' reconoce su responsabilidad de velar por aquellos niños que son víctimas de maltrato o negligencia para evitar que éstos continúen sufriendo daño, una vez que se sospeche o conozca que son víctimas de las personas que tienen el deber sagrado de velar por ellas; de proveerles los servicios y la ayuda que sea necesaria para fortalecer la familia de donde éstos provienen haciendo del hogar uno seguro para los niños, y cuando esto no sea posible, ofrecerles cuidado fuera del hogar en un ambiente saludable, ya sea en forma provisional o permanente, dependiendo de las circunstancias de cada caso.*

***La finalidad de esta ley es lograr la protección de los niños que son víctimas de maltrato o negligencia, por tanto, la actividad del funcionario, profesional o magistrado que intervenga en estos casos será, antes que nada, la protección a los menores."***

El propósito de la Ley Núm. 75 del 28 de mayo de 1980, fue ante todo, la protección de los menores víctimas de negligencia o maltrato de sus padres, por lo que el Departamento de la Familia, y cualquier funcionario a quien le corresponda aplicarla, tiene la obligación de proteger a los menores. Además, la ley le impone al Estado y al Departamento de la Familia en particular, la obligación de brindarle servicios a los padres biológicos de estos menores con el fin de rehabilitarlos, para poder devolverles la custodia del menor, de ello ser posible. *El Pueblo de Puerto Rico en interés de los menores R.P.S., M.P.S. y C.J.N.S.,* Opinión del 22 de julio de 1993, **93 J.T.S. 121**, a la pág. 11033.

Originalmente, el Artículo 29 de la Ley Núm. 75 establecía que los casos de maltrato o negligencia que requirieran la intervención del Tribunal General de Justicia, se ventilarán ante el Tribunal de Primera Instancia, Sala Superior de Asuntos de Menores. Sin embargo, el 26 de diciembre de 1993, la Asamblea Legislativa aprobó la Ley Núm. 132, enmendando el Artículo 29 de la Ley Núm. 75 para conferirle esa competencia a las Salas Superiores de Relaciones de Familia, y facultar al Departamento de la Familia a iniciar en esos casos, un proceso de privación, restricción o suspensión de la patria potestad, luego de agotar todos los esfuerzos razonables para reintegrar la familia del menor.

No obstante, el Artículo 13 de la Ley Núm. 132, dispuso expresamente que esa Ley sólo aplicaría a los casos presentados a partir de su aprobación. Esto significa que al aprobarse la Ley Núm. 132, las Salas de Asuntos de Menores no fueron despojadas de la competencia en aquellos casos de Ley Núm. 75 que estaban pendientes ante su consideración. El caso *Pueblo, en Interés de las Menores Reina y Erika Cristal,* JC-92-028, es uno de esos casos anteriores a la Ley Núm. 132, que estaba pendiente ante la Sala de Asuntos de Menores de Bayamón cuando ésta se aprobó, por lo que la Sala Superior de Asuntos de Menores retuvo competencia sobre el mismo y la continúa ejerciendo. Además, ninguna de las partes ha recurrido ante nos de alguna resolución del tribunal que trate sobre su competencia. En los casos ante nos, se pretende cuestionar esa competencia colateralmente, mediante la iniciación de otros procedimientos ante el Tribunal de Primera Instancia.

-2-

Por otra parte, la Ley Núm. 8 del 19 de enero de 1995, que tuvo el fin de flexibilizar los procedimientos de adopción. El Artículo 3 de la Ley Núm. 8, enmienda la Ley Núm. 75 para reiterar que la política pública del Estado Libre Asociado en estos casos es proteger el bienestar del menor, y aclarar que aun cuando el Estado Libre Asociado y el Departamento de la Familia en particular, tiene el deber de proveer servicios sociales para prevenir la necesidad de remover a un menor de su hogar y para rehabilitar a los padres, el cumplimiento de estos deberes no debe poner en riesgo la seguridad de los menores.

La Ley Núm. 8 comenzó a regir inmediatamente después de su aprobación el 19 de enero de 1995, y en ella no se expresa la intención de que tenga efecto retroactivo, ni de dejar sin efecto el Artículo 13 de la Ley Núm. 132, con relación a la competencia de la Sala Superior de Asuntos de Menores sobre los casos anteriores al 26 de diciembre de 1993.

La intención de la Asamblea Legislativa confiriéndole efecto retroactivo a una ley debe expresarse claramente. Así se establece en el Artículo 3 del Código Civil de Puerto Rico, 3 L.P.R.A. sec. 3; y lo ha reiterado el Tribunal Supremo de Puerto Rico en *Vázquez v. Morales,* 114 D.P.R. 822 (1983); *Díaz v. Secretario de Hacienda,* 114 D.P.R. 855 (1983). Definitivamente las enmiendas a la Ley Núm. 75 del 28 de mayo de 1980, tanto por la Ley Núm. 132 del 26 de diciembre de 1993, como por la Ley Núm. 8 del 19 de enero de 1995 no tienen efecto retroactivo; la Ley Núm. 132 lo indica expresamente y la Ley Núm. 8 lo establece al no disponer expresamente su retroactividad.

Las peticiones de adopción presentadas en los casos del título, fueron presentadas bajo las disposiciones de las Leyes Núm. 8 y Núm. 9 del 19 de enero de 1935. La Ley Núm. 8, *supra*, en su enmienda al Artículo 166 del Código Civil, establece las causas por las que se puede privar, restringir o suspender a una persona de la potestad sobre un hijo o hija. Una de esas causas es la falta de cumplimiento con el plan de servicios para reintegrar un menor abusado a su hogar. Véase, el Artículo 166A del Código Civil, según enmendado, por la Ley Núm. 8. ■

-3-

De este modo, en este momento, la posible reintegración de R.K.L.C. y E.K.L. bajo la custodia

permanente de su madre biológica, está ante la consideración de la Sala de Asuntos de Menores de Bayamón, que es la Sala competente para dirimir esa cuestión. De hecho, los padres de crianza intervinieron en dicho procedimiento, por lo que sus intereses, si algunos, están allí protegidos. A la Sala de Asuntos de Menores le corresponde dilucidar si la madre biológica debe recuperar la custodia de R.K.L.C. mediante los procedimientos establecidos por la Ley Núm. 75 del 28 de mayo de 1980, según enmendada. Nadie le ha cuestionado la competencia a la Sala de Asuntos de Menores. Su competencia cuestiona en procedimientos colaterales de adopción mediante los cuales se le pretende despojar de su autoridad para continuar el trámite de los procedimientos ante su consideración.

Hasta tanto la cuestión sobre la custodia permanente de la madre biológica no se dilucide ante la Sala Superior de Asuntos de Menores; la Sala Superior de Relaciones de Familia no puede asumir competencia para atender la petición de adopción. Al amparo de la Ley Núm. 75 la Sala Superior de Asuntos de Menores considerará toda la prueba testifical y pericial pertinente para determinar si la custodia de las menores R.K.L.C. y E.K.L. debe restaurársele a la madre biológica.

Ante tal situación, las peticiones de adopción de los matrimonios a quienes el Departamento de la Familia les asignó la crianza, no sólo son prematuras, sino que han tenido la consecuencia de atrasar y complicar los procedimientos contrario a los fines que persiguen las Reglas 1 y 38.1 de las de Procedimiento Civil. Por esta razón, lo lógico y lo razonable sería que, en armonía con las Regla 1 y 38.1 de las de Procedimiento Civil la Sala de Asuntos de Familia deje en suspenso las respectivas peticiones de adopción, hasta tanto se dilucide la cuestión de custodia ante la Sala de Asuntos de Menores. En ese momento, la Sala de Asuntos de Familia estaría en mejor condición para determinar si procede considerar la petición de adopción o si existe impedimento para ello.

Por los fundamentos anteriormente expuestos, respetuosamente disentimos de la decisión de la mayoría en estos casos.

**RAFAEL ORTIZ CARRION**
**Juez de Apelaciones**

### ESCOLIO VOTO DISIDENTE DEL JUEZ DE APELACIONES SR. ORTIZ CARRION — 96 DTA 130

**1.** En tales circunstancias el tribunal tendría que determinar que las condiciones que propiciaron que el menor fuese separado del hogar de sus padres subsisten, o existen condiciones similares que representan un serio riesgo para su bienestar.