PEDRO FERNANDO DIEZ RODRÍGUEZ, demandante y recurrido, *v.* MILAGROS GUZMÁN RUIZ y su menor hijo, JOHSIAN FERNANDO GUZMÁN, demandados y recurrentes.

*Número:* R-78-361 *Resuelto:* 31 de enero de 1979

*Héctor A. Colón Cruz, Procurador General,* y *Federico Cedó Alzamora, Procurador General Auxiliar,* abogados de los recurrentes; *Luis Roberto Santos,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Atendemos a la corrección de una situación de anormalidad jurídica producida por dos sentencias contradictorias sobre un hecho que resiste toda alternativa como lo es la paternidad de un menor: el Tribunal de Distrito la declaró probada en proceso criminal por abandono y descuido de menores, y el Tribunal Superior la rechazó en sentencia declaratoria.

El demandante y aquí recurrido Diez Rodríguez radicó el 30 de octubre de 1973 ante la Sala de Mayagüez del Tribunal Superior una acción civil(1) solicitando sentencia de-

---

(1) Sus alegaciones y súplica esenciales, transcritas de la demanda, son las siguientes:

"1. Que el 17 de septiembre de 1973 la codemandada Milagros Guzmán Ruiz dio a luz un niño varón a quien llamó Johsian Fernando Guzmán y dicho nacimiento fue inscrito al libro 318 del Registro Demográfico 48 de Mayagüez, Puerto Rico, Acta Número 4413. (Véase exhibit 'A'.)

2. Que desde el mes de abril de 1973 la codemandada Milagros Guzmán Ruiz ha venido requiriendo del demandante que reconozca al menor Johsian Fernando Guzmán como hijo de él, que lo inscriba con su apellido y, desde que dicho menor nació, que le pase alimentos. El demandante, en todo momento ha negado rotundamente ser el padre del menor co-demandado.

3. Que dicho menor reside en compañía de su madre y está bajo la custodia y patria potestad de ella.

4. Que los requerimientos hechos por la co-demandada han sido hechos en forma escandalosa, en sitios públicos y en forma orientada a someter al demandante al menosprecio y escarnio de los presentes.

5. Que el 16 de octubre de 1970 el demandante se sometió a una intervención quirúrgica de vasectomía bilateral y luego se hizo análisis de esperma que resultaron negativos por lo que desde mucho tiempo antes de ser concebido el menor co-demandado Johsian Fernando Guzmán, el demandante estaba físicamente incapacitado para la procreación.

6. Que durante el período crítico de la concepción del menor Johsian Fernando Guzmán, la co-demandada Milagros Guzmán Ruiz llevaba relaciones maritales con otros hombres que no eran el demandante.

7. Que la presente acción se radica bajo las disposiciones de la Ley de Sentencias Declaratorias. (32 L.P.R.A. sec. 2991 y subsiguientes.)

POR TODO LO CUAL suplica de este honorable tribunal se sirva declarar con lugar la presente demanda haciendo las siguientes determinaciones:

claratoria contra los recurrentes Milagros Guzmán Ruiz y su hijo menor de edad Johsian Fernando Guzmán por la que se declare que éste no es hijo del demandante, y que se ordene a su señora madre cesar en sus requerimientos y persecución del demandante para que lo reconozca como hijo suyo. La madre y el menor demandado fueron emplazados el 17 de noviembre de 1973 y el tribunal designó al Fiscal de Distrito defensor judicial del menor demandado, quien el 6 de septiembre de 1974 presentó su contestación controvirtiendo los hechos esenciales de la demanda, y en iguales términos contestó la demandada Milagros, insistiendo ambos en que se declarara al actor padre de dicho niño.

Ya antes de alegar en la acción civil la madre demandada había presentado por derecho propio el 26 de julio de 1974 (ocho meses después de emplazada) ante el Tribunal de Distrito denuncia contra Diez imputándole el delito de abandono y descuido de menores sancionado por el Art. 263 del anterior Código Penal (33 L.P.R.A. sec. 991), sobre la cual hubo un juicio en el que resultó el acusado culpable por sentencia [2] de 10 de diciembre de 1974 que le impuso 30 días de cárcel, suspendida a condición de que pague una pensión alimenticia de $50 cada quince días.

El 31 de marzo de 1977 luego de un juicio en los méritos y sostenida por una prueba que comprendía entre sus elementos el prestigio científico de un examen serohematológico, [3] excluyente de la paternidad atribuida al acusado y demandante, el Tribunal Superior dictó sentencia declarando que Fernando Diez no es el padre del menor concernido. Firme y ejecutoria esta sentencia en la acción civil, a solicitud del demandante

(A) Que el demandante Pedro Fernando Diez no es el padre del menor co-demandado Johsian Fernando Guzmán; . . . ."

[2] El demandante acusado apeló dicha sentencia al Superior pero el recurso fue desestimado por razones procesales. También trató de obtener un nuevo juicio que le fue denegado.

[3] Esta prueba no estuvo disponible para los días de juicio por abandono de menores en el Tribunal de Distrito.

Diez, el Tribunal Superior dictó resolución([4]) el 15 de septiembre de 1978 ordenando la eliminación del nombre de Diez del acta de nacimiento del menor, inscripción practicada como parte de la sentencia del Tribunal de Distrito, según ordenaba el Art. 263 del Código Penal.

Al recurso del Procurador General en representación del menor demandado, expedimos el auto el 2 de noviembre de 1978.

---

([4]) La parte relevante de dicha Resolución dice:

"Habiéndose radicado la acción civil primero en tiempo y radicada la denuncia criminal aproximadamente nueve meses después de la interposición de éste; examinada la imposibilidad física de que el demandante sea el padre del menor J.F.G.; visto que la sentencia dictada en este caso es una firme al presente y atendido que el Tribunal considera que tiene la obligación de poner fin a este litigio y aclarar el estado de las partes frente al sistema judicial puertorriqueño y ante la sociedad, y atendido, en adición, que el fin último de los pleitos de naturaleza filiatoria es el de localizar al verdadero padre de la persona y habiéndose cumplido fielmente con los postulados del hacer justicia cumplida, por la presente se declara con lugar la moción del demandante solicitando la eliminación de su nombre del Libro 318 de Mayagüez Acta 4413; Registro 48; donde aparece como padre del menor J.F.G.

"Se ordena a los funcionarios del Registro Demográfico de Puerto Rico eliminar el nombre de Pedro Fernando Diez Rodríguez de los Libros de actas del Registro Demográfico de Puerto Rico, donde pueda aparecer éste como padre del menor Johsian Fernando Guzmán. Esta resolución y orden tiene el efecto de dar por terminada para todos los fines de ley cualquiera relación de naturaleza legal o económica entre el menor demandado J.F.G. y el demandante Pedro Fernando Diez Rodríguez, para así, de una vez y para siempre, dar por terminado con los incidentes en este caso."

Dos semanas después el 29 de septiembre de 1978 en recurso de *certiorari* del acusado Diez contra resolución del Tribunal de Distrito denegatoria de una moción de nuevo juicio y nulidad al amparo de R.P.Crim. 192, el Juez Superior, Señor Elí B. Arroyo, actuando en la Sala de Mayagüez, dictó la siguiente

"SENTENCIA

Vista la petición y sus anejos se expide el auto de certiorari solicitado, y en uso de la discreción que nos concede la Regla 71 de Procedimiento Civil, se anula y deja sin efecto la sentencia dictada por el Tribunal de Distrito en el caso Criminal Número TD-74-1219, por existir una determinación final en el caso Civil Número CS-73-4412 que concluye que Pedro Fernando Diez Rodríguez no es el padre del menor y cuya acción civil fue instada antes que la criminal *Pol Sella* v. *Lugo,* resuelto en 18 de septiembre de 1978."

En instancia, el Pueblo de Puerto Rico para sostener la sentencia de paternidad recaída en el caso criminal por abandono de menores descansó principalmente en la alegación de cosa juzgada; y en su solicitud de revisión la reproduce imputando error al Tribunal Superior por no reconocerle valor de precedente a la primera sentencia dictada en el Tribunal de Distrito. Concreta su planteamiento al decir "que estando ya consagrada oficialmente la filiación paterna del menor aquí envuelto, no existía ni existe controversia justiciable ni incertidumbre en tal sentido que pudiera resolverse en una acción de sentencia declaratoria, sino que por el contrario el resultado de dicha acción sólo ha venido a crear una incertidumbre o controversia que no debía existir." Negada por el Tribunal Superior calidad de cosa juzgada o de impedimento colateral a la sentencia del Tribunal de Distrito, el recurso de sentencia declaratoria no sería académico, sino remedio adecuado para poner fin a una controversia. ([5]) No incidió el Tribunal Superior.

 Iniciada con anterioridad la acción civil y debidamente emplazados la madre y el menor demandados, tanto derecho tenía el demandante a proseguir su acción en el Tribunal Superior como ella a radicar nueve meses después la denuncia por abandono de menores en el Tribunal de Distrito. Nuestro Derecho provee estos dos foros para investigar y adjudicar la paternidad, aun cuando siguiendo procedimientos disímiles, exclusivamente civil uno, y básicamente criminal el otro, y la prioridad en tiempo de interposición de la acción civil no es *injunction* que impida al menor valerse del más rápido remedio provisto en la esfera penal. Tampoco la premura de una parte altera en lo más mínimo la naturaleza de cada una de estas acciones, diferenciadas fundamentalmente por exigencias de la prueba que ha de sostener la

---

([5])*Moscoso* v. *Rivera*, 76 D.P.R. 481 (1954); Arts. 5 y 6 de la Ley de Sentencias Declaratorias, que es la Núm. 47 de 25 de abril de 1931 (32 L.P.R.A. secs. 2995 y 2996).

adjudicación de paternidad: en la acción criminal el grado de prueba ha de alcanzar una dimensión suficiente para derrotar la presunción de inocencia; en la acción civil bastará la preponderancia de prueba en la estimación del juzgador para declarar la filiación.

En el presente caso la demanda civil tomó precedencia en tiempo, y el menor debidamente emplazado y con defensor *ad litem* designado, no podía "crearse" una defensa sobre la marcha por el simple expediente de lograr que en su nombre se promoviera el caso criminal. Por imperativo de las Reglas la bifurcación o fragmentación de los procedimientos es indeseable, y se propende por el contrario a la máxima expansión del ámbito de la acción civil trayendo a su núcleo los elementos dispersos de reclamaciones, partes y remedios en orden a la adjudicación integral de la controversia. *United Mine Workers of America* v. *Gibbs*, 383 U.S. 715, 724 (1966). El menor tenía un foro asequible en la acción civil filiatoria que propiciaba en óptimo grado la evaluación de su prueba, por lo que no se justifica exceptuarlo de la norma que proscribe la multiplicidad de litigios. Un litigante que acude con antelación en tiempo a pedir remedio debe ser protegido en su derecho a proseguir el procedimiento iniciado en ausencia de opresión o abuso de derecho.

El orden procesal rechaza la adjudicación de una cuestión esencialmente indivisible como lo es la filiación en dos foros distintos con la probabilidad, fundada en el distinto grado de prueba exigido en lo civil y en lo criminal, de que se produzca la anomalía[6] que confrontamos en este caso:

---

[6] Nuestro antiguo Derecho, en el Art. 108 del Código de Enjuiciamiento Civil proveía la llamada excepción de *litispendencia* cuya "razón jurídica . . . estriba en evitar que por dos tribunales competentes se dicten dos sentencias contradictorias absolviendo en una y condenando en otra, sobre la misma materia y entre las mismas personas." *Banco Territorial y Agrícola* v. *Arvelo*, 7 D.P.R. 566, 571 (1904); *Sucn. Abarca* v. *Nones*, 33 D.P.R. 507 (1924).

el Tribunal de Distrito declara al niño hijo del imputado; y el Tribunal Superior desestima su reclamo de filiación.

No obstante el acercamiento y la considerable integración del resultado final viabilizados por *Toro Lugo* v. *Ortiz Martínez*, 105 D.P.R. 229 (1976), la acción civil y la criminal se mantienen como procedimientos independientes y ninguna puede absorber o paralizar la otra aun cuando se desarrollen en contemporaneidad. Esta coexistencia en nada disminuye la realidad de que la sentencia obtenida en el caso civil tiene el superior valor de precedente obligatorio derivado de la mayor amplitud y liberalidad en la evaluación de la prueba, libre el arbitrio del juzgador de una exigencia en *quantum* que en lo criminal impone la obligación de derrotar la presunción de inocencia. *Cf. Pol Sella* v. *Lugo Christian*, 107 D.P.R. 540 (1978).

La excepción de cosa juzgada se caracteriza por la finalidad previa de la primera sentencia, obtenida con antelación absoluta al segundo pleito en que se invoca, y no en la simultánea tramitación de ambos procedimientos. Cosa juzgada no es "cosa juzgándose". A su efecto de terminación radical de la controversia se le llama la "santidad" de cosa juzgada en reconocimiento de su respetabilidad y porque representa la concreción de justicia hecha, con audiencia a las partes. La sentencia en el caso criminal, hija de la anomalía procesal de la *litispendencia,* en la que dos acciones separadas compitieron en carrera, como si de una prueba deportiva se tratara, no tiene esa calidad de *res judicata*. La prelación del pleito cuya sentencia se oponga como cosa juzgada debe retrotraerse a la fecha de su comienzo.

*Se anulará el auto expedido. Confirmada.*

El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Martín concurren en el resultado y se unen al Voto Particular emitido por el Juez Asociado Señor Dávila. El Juez Asociado Señor Negrón García disintió sin opinión.

—O—

Opinión concurrente emitida por el Juez Asociado Señor Dávila, a la cual se unen el Juez Presidente, Señor Trías Monge y el Juez Asociado, Señor Martín.

San Juan, Puerto Rico, a 31 de enero de 1979

Concurro con la opinión del Tribunal porque entiendo que habiéndose establecido por el análisis de la sangre de las partes envueltas en este litigio que indubitablemente Pedro Fernando Diez Rodríguez no puede ser el padre de Johsian Fernando Guzmán, McCormick, *On Evidence*, Sec. 211, págs. 517–522; Ross, *The Value of Blood Tests as Evidence in Paternity Cases*, 71 Harv. L. Rev. 466 (1958), la defensa de cosa juzgada tiene que ceder ante la verdad científicamente comprobada. Véase *Pérez v. Bauzá*, 83 D.P.R. 220, 226 (1961):

"Sin embargo, los tribunales se han negado a aplicar en forma inflexible la defensa de cosa juzgada cuando hacerlo derrotaría los fines de la justicia, especialmente si hay envueltas consideraciones de orden público. *In re Spinosa's Estate*, 255 P.2d 843 (Cal. 1953); *Universal Const. Co. v. City of Fort Lauderdale*, 68 So.2d 366 (Fla. 1953); *Commissioner of State Insurance Fund v. Law*, 148 N.E.2d 136 (N.Y. 1958). Esto es particularmente cierto en los casos en que la sentencia anterior se opone a un menor de edad, que ordinariamente ha estado impedido de protegerse a sí mismo contra la conducta impropia o descuidada de su representante legal. *In re Di Carlos*, 44 P.2d 562 (Cal. 1935). Según se ha expresado, la doctrina descansa en el principio básico de que debe propiciarse la terminación de litigios, pero si la aplicación rigurosa de la misma derrotaría en la práctica un derecho permeado en alguna forma del interés público, los tribunales se inclinan hacia la solución que garantice cumplida justicia, en lugar de favorecer en forma rígida una ficción de ley que obedece fundamentalmente a un principio de conveniencia y orden procesal. *Universal Const. Co. v. City of Fort Lauderdale*, 68 So.2d 366 (Fla. 1953). En otras palabras, la regla no es absoluta y debe siempre considerarse conjunta-

mente con el saludable principio de que debe dispensarse justicia en cada caso. *Hodgson* v. *Applegate*, 155 A.2d 97 (N.J. 1959).

Es indudable que la acción de filiación, vehículo que concede la ley para establecer el status familiar del ciudadano, está revestida de un gran interés público, y tiene hasta tangencias constitucionales si se quiere, por lo que con ello afecta la dignidad del individuo. . . ."

Tanto debe protegerse al niño que se le niega un padre como al padre que se le quiere imponer un hijo que científicamente se demuestra que no lo es.