<table>
<tr><td colspan="3" align="center">Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>Panel XII</td></tr>
<tr>
<td>DORADO MOON MANAGEMENT, LLC<br><br>Peticionaria<br><br>V.<br><br>JOSÉ MIGUEL NOLLA Y OTROS<br><br>Recurrida</td>
<td rowspan="2">KLCE202401366 consolidado con KLRA202400696</td>
<td><em>Certiorari</em> procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. BY2024CV04955 (SALÓN 502)<br><br>Sobre:<br>DAÑOS Y OTROS</td>
</tr>
<tr>
<td>JOSÉ MIGUEL NOLLA AMADO Y/O MARÍA V. SEDA ALBERT<br><br>Querellante-Recurrente<br><br>v.<br><br>DORADO MOON MANAGEMENT, LLC; ROSA M. RORÍGUEZ MARTÍN, VANESA M. NAVIA RIVERA<br><br>Querellados-Recurridos</td>
<td><em>Revisión administrativa</em> procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm. SAN-2024-0019870<br><br>Sobre:<br>BIENES RAÍCES (LEY NÚM. 10 DE 26 DE ABRIL DE 1994, SEGÚN ENMENDADA)</td>
</tr>
</table>

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 4 de febrero de 2025.

El 17 de diciembre de 2024, los peticionarios, José Miguel Nolla, María Verónica Seda Albert y su sociedad legal de gananciales presentaron el recurso de certiorari KLCE202401366. Los peticionarios solicitan que revisemos la denegatoria del Tribunal de Primera Instancia a desestimar la demanda en su contra.

La recurrida, Dorado Moon Management, LLC presentó su oposición al recurso.

El 19 de diciembre de 2024, José Miguel Nolla, María Verónica Seda Albert y su sociedad legal de gananciales presentaron el recurso KLRA202400696 para que revisemos la resolución en la que el DACo

desestimó la querella que presentó contra Dorado Moon y las corredoras de bienes raíces, Rosa M. Rodríguez Martín y Vanessa M. Navia Rivera.

Los esposos Nolla Seda solicitaron la consolidación de ambos recursos porque están basados en la misma disputa jurisdiccional sobre cual foro debe atender la controversia en primera instancia. Dorado Moon Management, LLC se opuso a la consolidación y alegó que no existen bases jurídicas para paralizar el caso que presentó en el TPI contra los esposos Nolla Seda y las corredoras de bienes raíces. Además, argumentó que eran casos separados y diferentes, resueltos en momentos y en foros distintos en los que se buscan remedios distintos e incompatibles. Por último, adujo que la consolidación de un recurso discrecional con uno obligatorio es irreconciliable.

Nos corresponde atender y resolver en primera instancia si procede la consolidación conforme al derecho aplicable y a los hechos y controversias existentes en ambos recursos.

## I.

El 26 de agosto de 2024, Dorado Moon presentó una demanda por incumplimiento de contrato y daños perjuicios contra los esposos Nolla Seda, su sociedad legal de gananciales y las corredoras de bienes raíces. La demanda incluyó las alegaciones siguientes. Dorado Moon vendió a los esposos Nolla Seda el inmueble descrito en la demanda. Las codemandadas participaron en el negocio como las corredoras de bienes raíces de los compradores. Dorado Moon requirió a los compradores que pagaran el precio de venta en efectivo. Las corredoras de bienes raíces y los compradores en todo momento hicieron creer a la vendedora que los esposos Nolla Seda tenían capacidad para comprar la propiedad en efectivo. El 26 de julio de 2024, una de las corredoras envió a Dorado Moon el contrato de compraventa en el que constaba el precio de venta de un millón trescientos mil dólares ($1,300,000.00), el pago de un depósito de cuarenta mil dólares ($40,000.00) y de un millón doscientos sesenta mil dólares ($1,270,000.00), mediante cheque certificado al momento de firmar las escrituras. Posteriormente, realizaron un nuevo acuerdo a solicitud de los compradores. Los esposos

Nolla Seda realizaron un depósito de trescientos mil dólares ($300,000.00) y se extendió el término para perfeccionar la compraventa. Ninguno de los acuerdos escritos incluyó una cláusula para que el pago fuera mediante un financiamiento. El 31 de julio de 2024, Dorado envió el contrato firmado a las corredoras de bienes raíces. Véase Demanda, págs. 32 a 60, apéndice KLRA202400696.

Dorado Moon adujo que no intervino en la redacción de los contratos preparados por las corredoras de bienes raíces y evaluados por la abogada notaria de los compradores. Según Dorado, del contrato de compraventa no puede concluirse de manera clara y libre de ambigüedad, si el negocio era en efectivo o podía ser financiado. No obstante, insistió en que siempre les dijo a los demandados que el precio de venta tenía que ser pagado en efectivo y que le representaron que los compradores tenían la capacidad económica. Dorado Moon adujo que los compradores se retractaron de la compraventa y se negaron a cumplir con sus obligaciones contractuales, porque el banco les denegó el financiamiento. No obstante, pretendían la devolución del depósito. El demandante invocó la aplicación de los Arts. 354, 31 LPRA secs. 6342 y 358, 31 LPRA sec. 6346 del Código Civil de 2020 sobre la interpretación del negocio jurídico. Finalmente, alegó que los compradores presentaron de forma temeraria una querella en el DACo solicitando la devolución del depósito. *Íd.*

El demandante pidió: (1) la consignación de los trescientos mil dólares ($300,000.00) del depósito hasta que se dilucide la controversia, (2) que los compradores compren la propiedad en o antes del 30 de septiembre de 2024 o (3) en la alternativa, pueda retener los trescientos mil dólares ($300,000.00) del depósito. Además, solicitó que los demandados paguen las costas y honorarios de abogado, conforme a lo acordado. *Íd.*

Los compradores solicitaron la desestimación de la demanda, porque alegaron que DACo tenía la jurisdicción sobre la controversia. Véase, *Moción de desestimación,* págs. 60 a 71, apéndice KLRA202400696. El TPI no desestimó la demanda porque la controversia era puramente contractual y no

requería la pericia del foro administrativo sobre la Ley Núm. 10-1994. Los recurrentes solicitaron reconsideración. El TPI se negó a reconsiderar la decisión.

Inconforme, los compradores presentaron el recuso de certiorari en el que alegan que:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA MOCIÓN DE DESESTIMACIÓN POR EXISTIR JURISDICCIÓN PRIMARIA DEL DACo.

Por otro lado, el 20 de agosto de 2024, los esposos Nolla Seda presentaron la querella en el DACo, contra las corredoras de bienes raíces y Dorado Moon. La querella se presentó al amparo del Art. Núm. 31(11) de la Ley para Reglamentar el Negocio de Bienes Raíces y la Profesión de Corredor, Vendedor o Empresas de Bienes Raíces, Ley Núm. 10-1994, que prohíbe a los corredores de bienes raíces retener o inducir a retener el depósito en los casos en los que la transacción no se completó por causas ajenas al comprador. En apretada síntesis, los compradores alegaron que el banco denegó el financiamiento por causas ajenas a su voluntad y que las corredoras de bienes raíces se negaban a devolverle el depósito. Véase, págs. 20-25, apéndice KLRA202400696.

Las corredoras de bienes raíces solicitaron que se les relevara de responder la querella, porque el foro judicial atendía una controversia que incidía directamente sobre la jurisdicción de la agencia. Las querelladas alegaron que la coquerellada, Dorado Moon, presentó en el TPI el caso BY2024CV04955 por incumplimiento de contrato contra los esposos Nolla Seda y ambas corredoras en el que solicitó: (1) la consignación del depósito hasta que se dilucide el caso, (2) que los compradores cumplan con el contrato de compraventa y (3) que de incumplir se determine que Dorado Moon tiene derecho a retener el dinero dado como depósito. Véase págs. 27-31, apéndice KLRA202400696.

El DACo ordenó a los esposos Nolla Seda mostrar causa para no desestimar la querella. Las corredoras informaron al DACo que el TPI había denegado la moción de desestimación de los esposos Nolla Seda en el caso

que Dorado Moon presentó en su contra. Las querelladas advirtieron que el tribunal resolvió que la controversia era puramente contractual y no requería de la pericia del DACo.

El foro administrativo reconoció que, como regla general, los tribunales aplican la doctrina de jurisdicción primaria, cuando la pericia de la agencia es indispensable para resolver la controversia. No obstante, advirtió que la aplicación de esa doctrina no es automática. La agencia determinó que no tenía jurisdicción exclusiva para atender los reclamos de los querellantes contra los corredores de bienes raíces y reconoció que el Art. 23 (g) de la Ley Núm. 10, *supra,* le concede jurisdicción concurrente con el foro judicial. La agencia entendió que lo correcto era que la controversia fuera atendida por el tribunal, debido a que los remedios solicitados por los querellantes surgen de causas de acción contenidas en el Código Civil, como los contratos y las reclamaciones de daños y perjuicios. Al DACo le quedó claro que esas controversias no requerían su pericia, porque no eran de naturaleza técnica. Según la agencia, es al tribunal al que le corresponde atender la controversia, porque el querellante alega incumplimiento de contrato y reclama una indemnización por daños y perjuicios. Por último, hizo hincapié en que los recurrentes podían presentar en el TPI cualquier defensa o reconvención que estimaran pertinente, debido a que las controversias versan sobre asuntos relacionados al derecho civil que puede ser resuelto por ese foro. Véase, Resolución, págs. 223-230, apéndice KLRA202400696.

La recurrente presentó el recurso KLRA202400696 en el que alega que:

ERRÓ DACO AL DESESTIMAR SIN PERJUICIO LA QUERELLA Y DEJAR DE EJERCER SU JURISDICCIÓN Y FACULTAD BAJO LA LEY 10-1994.

La Regla 80.1 del Reglamento del Tribunal de Apelaciones autoriza la consolidación de los recursos sobre una sentencia, orden o resolución. Los recursos podrán consolidarse por orden a iniciativa de este tribunal o a solicitud de parte.

Nuestro ordenamiento jurídico procesal promueve la solución justa rápida y económica de los procedimientos judiciales. Regla 1 de

Procedimiento Civil, 32 LPRA Ap. V, R. 1. Uno de los principios cardinales de nuestro derecho procesal es evitar la multiplicidad de pleitos y adjudicar en una causa las distintas reclamaciones de las partes, si su naturaleza lo permite. *Vives Vázquez v. ELA,* 142 DPR 117, 125 (1996). La consolidación de los casos es uno de los mecanismos para lograr la economía procesal, porque evita la proliferación de las causas de acción entre las mismas partes e impide fallos incompatibles sobre un mismo incidente. *Crespo Quiñones v. Santiago Velázquez,* 176 DPR 408, 416 (2009). El Tribunal Supremo de Puerto Rico desfavorece la fragmentación de los procedimientos judiciales. *Diez Rodríguez v. Guzmán Ruiz,* 108 DPR 371, 378 (1979).

La Regla 38.1 de Procedimiento Civil, 32 LPRA Ap. V, R.38.1, establece las instancias en las que el tribunal tiene la discreción de ordenar la consolidación de los pleitos ante su consideración. El tribunal podrá ordenar la celebración de una sola vista o juicio en pleitos pendientes que comprendan cuestiones comunes de hechos o de derecho. Tal facultad se extiende a todas las cuestiones litigiosas comprendidas en dichos pleitos. El tribunal podrá ordenar que todos los pleitos sean consolidados y dictar aquellas órdenes que eviten gastos o dilaciones innecesarias. Nuestro más Alto Foro judicial local ha resuelto que para que proceda la consolidación no es necesario que las cuestiones de hecho y derecho sean idénticas ni que las acciones a consolidarse sean de la misma naturaleza. La identidad de parte tampoco es necesaria, pero es un aspecto que puede pesar sobre el ánimo del juzgador. No obstante, existen dos (2) requisitos fundamentales para que proceda la consolidación. Los casos tienen que: (1) presentar cuestiones comunes de hecho o de derecho, y (2) estar pendientes ante el tribunal. *Crespo Quiñones v. Santiago Velázquez,* supra. págs. 415-416; *Vives Vazquez v. ELA,* supra, pág. 127.

El tribunal deberá evaluar si la consolidación promueve la buena administración de la justicia, la aceleración en la resolución de disputas y la reducción en los costos de la litigación, conforme a las circunstancias particulares del caso. *M-Care Compounding et al. v. Depto. Salud,* 186 DPR

159, 172 (2012); *Vives Vázquez v. ELA,* supra, pág. 136. Además, debe evaluarse de forma general los perjuicios que la consolidación puede ocasionar a los litigantes y al sistema e impartir justicia. El momento y etapa procesal y la complejidad de los casos son otros factores a considerar para determinar si la consolidación es lo correcto. *Vives Vázquez v. ELA,* supra, págs.136-137. Únicamente podrán consolidarse casos presentados cuyo trámite esté pendiente ante alguna sala del Tribunal de Primera Instancia. *Vives Vázquez v. ELA,* supra, pág. 135.

El juzgador tiene amplia discreción para determinar la procedencia de una solicitud de consolidación, a la luz de hechos y circunstancias particulares ante su consideración. *Vives Vázquez v. ELA,* supra, pág. 139. No obstante, deberá analizar si la consolidación tiende al logro de una resolución justa, rápida y económica de las acciones. Además de evitar resultados inconsistentes entre distintas disputas que compartan cuestiones similares de hecho o de derecho. *Hosp. San Fco., Inc. v. Sria. de Salud,* 144 DPR 586, 593 (1997).

La determinación de consolidación efectuada, luego de un análisis ponderado de la totalidad de las circunstancias de los casos, merecerá gran deferencia por parte del tribunal revisor. El Tribunal Supremo de Puerto Rico ha resuelto que dicha determinación solo será alterada cuando el juez haya omitido considerar algún factor importante o cuando incurra en un abuso de su discreción. *M-Care Compounding et al. v. Depto. Salud,* supra, págs. 172-173.

Este tribunal analizó ponderadamente todas las circunstancias existentes en ambos casos y recursos y concluimos que procede su consolidación porque no ocasiona ningún perjuicio a las partes, ya que promueve la solución justa, rápida y económica de los procedimientos. La consolidación, además, evita la multiplicidad de pleitos entre las mismas partes e impide fallos incompatibles sobre un mismo asunto. Los requisitos para la consolidación se cumplen, porque las partes en la querella administrativa son los compradores que comparecieron como querellantes y

los querellados son las corredoras de bienes raíces y la vendedora. Estas son exactamente las mismas que comparecieron en la demanda que la vendedora presentó en el TPI. Los asuntos, controversias de ambos casos y recursos permiten y favorecen la consolidación. El denominador común en ambos casos es el contrato de compraventa suscrito entre las partes y en el que actuaron como corredoras de bienes raíces las codemandadas. La solución a esa controversia está atada a determinar si las partes acordaron que el comprador tenía que hacer el pago en efectivo o podía estar sujeto a financiamiento. A su vez, la solución a esa controversia es determinante para resolver si los compradores tenían derecho a que se les devolviera el depósito o si el vendedor tenía derecho a retenerlo. La responsabilidad, si alguna, de las corredoras de bienes raíces también está sujeta a si procedía la devolución del depósito conforme a lo pactado.

Una vez resuelta la consolidación, nos corresponde atender las controversias planteadas en ambos recursos. Los compradores cuestionan en el recurso de revisión que el DACo desestimó la querella sin perjuicio y no ejerció la jurisdicción y la facultad que le concede la Ley Núm. 10, *supra.*

**II.**

**Revisión Judicial**

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro del marco de las facultades que le fueron delegadas. A través de la revisión judicial, los tribunales pueden constatar que los organismos administrativos cumplan con los mandatos constitucionales que rigen su función y, en especial, con el debido proceso de ley. Su propósito es proveerle a la ciudadanía un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias. La revisión judicial constituye el recurso exclusivo para revisar los méritos de las decisiones administrativas adjudicativas o informales. *Capote Rivera v. Voilí Voilá Corporation,* 2024 TSPR 29, 213 DPR ___ (2024).

Los tribunales sostendrán las determinaciones de hechos de una agencia si están basadas en la evidencia sustancial que obra en el expediente administrativo, considerado en su totalidad. La evidencia sustancial es aquella pertinente que una mente razonable puede aceptar como adecuada para sostener una conclusión. La parte que alega ausencia de evidencia sustancial no puede descansar en meras alegaciones, porque tiene que presentar prueba suficiente para derrotar esa presunción. Dicha parte tiene que demostrar que en el expediente existe otra prueba que reduce o menoscaba el valor probatorio de la impugnada. El tribunal tiene que quedar convencido de que es imposible concluir que la determinación de la agencia fue razonable, conforme a la totalidad de la prueba ante su consideración. Cuando la impugnación de las determinaciones de hecho está basada en la prueba oral y en la credibilidad que le dio la agencia, es imprescindible traer a la consideración del foro revisor la transcripción de la vista celebrada a una exposición narrativa de la prueba. *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 127-129 (2019).

La Sección 4.5 de la Ley 38-2017, 3 LPRA sec. 9675, autoriza expresamente a los tribunales a revisar en todos los aspectos las determinaciones de derecho de las agencias administrativas. Tan reciente como en *Capote Rivera v. Voilí Voilá Corporation,* supra, el Tribunal Supremo de Puerto Rico ratificó la norma de conceder amplia deferencia a las determinaciones de las agencias administrativas, debido a su pericia. Según resolvió: (1) las determinaciones de los organismos administrativos están revestidas de una presunción de regularidad y corrección, debido a su vasta experiencia y conocimiento especializado, (2) el criterio de la agencia solo puede sustituirse, cuando no existe una base racional para explicar su decisión y (3) la deferencia solo cede cuando: (a) la decisión no está basada en evidencia sustancial, (b) el organismo administrativo erró en la aplicación o interpretación de las leyes o reglamentos, (c) ha mediado una actuación arbitraria, irrazonable o ilegal o (d) la actuación administrativa lesiona derechos constitucionales fundamentales.

No obstante, el Tribunal Supremo de Estados Unidos revocó en *Loper Bright Enterprises v. Raimondo* resuelto el 28 de junio de 2024, la norma de deferencia judicial a la interpretación que hacen las agencias administrativas de la ley que le corresponde poner en vigor. Dicha norma fue establecida en *Chevron USA v. Natural Res Def. Council,* 467 US 837 (1984). El tribunal adoptó en *Chevron* un análisis de dos pasos para revisar las conclusiones de derecho del foro administrativo en la disposición cuestionada. Si el Congreso manifiesta su intención de forma clara, el asunto queda finiquitado y no es necesario pasar al segundo paso. No obstante, el segundo paso, aplica cuando la ley guarda silencio o es ambigua. Si eso ocurre, el tribunal no podía imponer su interpretación, porque estaba obligado a dar deferencia a la interpretación hecha por la agencia, siempre que fuera permisible. La norma de la deferencia aplicaba incluso, si el tribunal no hubiese concluido de la forma. La opinión en *Chevron* estaba basada en una presunción de que la intención del Congreso era que las agencias resolviesen las ambigüedades de las leyes que administran, debido a su conocimiento y experiencia en la materia.

**El Tribunal Supremo resolvió en *Loper,* que la norma de deferencia establecida en *Chevron* sobre la interpretación de la ley, es irreconciliable con la Sección 706 de la Administrative Procedure Act (APA).**

El tribunal determinó que *Chevron* desafiaba el mandato de la APA al tribunal revisor de decidir todas las cuestiones de derecho pertinentes e interpretar las disposiciones legales. Además, hizo hincapié en que el Artículo III de la Constitución Federal asigna al poder judicial la responsabilidad de decidir casos y controversias. Según el Tribunal Supremo de Estados Unidos, los redactores de la Constitución previeron que la interpretación final de las leyes compete al poder judicial. Aunque reconoció que los tribunales pueden tomar conocimiento de las opiniones del poder ejecutivo, advierte que no pueden reemplazar el juicio judicial. *Loper* nos deja claro que las agencias no tienen competencia especial para resolver ambigüedades estatutarias, porque

esa facultad es del foro judicial. El tribunal advierte que incluso en *Chevron* se reconoció que el poder judicial es la autoridad final en cuestiones de interpretación estatutaria. Por último, advierte que los redactores de la Constitución garantizaron que los jueces federales puedan ejercer su juicio libre de la influencia del poder político, pero reconoce que el Congreso puede otorgar autoridad a las agencias, sujeto a los límites constitucionales.

### Jurisdicción Primaria

La doctrina de jurisdicción primaria es una norma de auto limitación judicial y su origen es jurisprudencial. Su propósito es determinar si es el foro administrativo o el judicial el que tiene la jurisdicción original para entender y adjudicar determinado asunto. Además, delimita los entornos en los que un tribunal debe abstenerse de ejercer su jurisdicción hasta que la agencia administrativa resuelva la controversia ante su consideración. Nuestro ordenamiento ha adoptado dos vertientes de la doctrina de jurisdicción primaria. Una es conocida como la jurisdicción primaria concurrente y la otra como jurisdicción primaria exclusiva. *MCS Advantage v. Fossas Blanco et al,* 211 DPR 135, 146 (2023).

El Tribunal Supremo de Puerto Rico ha resuelto que la jurisdicción primaria concurrente, presupone que tanto el foro administrativo como el judicial tienen jurisdicción para entender en determinada controversia. Sin embargo, en la mayoría de las ocasiones, el tribunal cede la primacía a la agencia, debido a su pericia y conocimiento especializado sobre el asunto objeto de la reclamación. *MCS Advantage v. Fossas Blanco et al,* supra, págs. 146-147.

La jurisdicción primaria exclusiva o también llamada estatutaria ha sido expresamente conferida por ley a una agencia administrativa para que dilucide en primera instancia determinada controversia. Cuando hablamos de jurisdicción primaria, nos referimos a la jurisdicción sobre la materia, que el legislador confirió exclusivamente a una agencia administrativa. Los tribunales están impedidos de intervenir en primera instancia en los asuntos y materias sobre los que el legislador confirió jurisdicción exclusiva al

organismo administrativo. Al momento de evaluar si un estatuto confiere jurisdicción primaria al foro administrativo, es necesario determinar si ha sido dispuesto en la ley expresamente o si es una implicación necesaria. La determinación de si es el foro administrativo el que tiene jurisdicción primaria requiere analizar su ley habilitadora. La jurisdicción primaria exclusiva no soslaya, la revisión judicial. Únicamente la pospone hasta tanto el organismo administrativo emita su determinación final. *MCS Advantage v. Fossas Blanco et al,* supra, págs. 147-148.

### La autoridad del DACo para supervisar el negocio de bienes raíces

La ley es la fuente que establece los límites del poder y las facultades de las agencias administrativas. El legislador establece en su ley habilitadora los poderes necesarios para actuar, conforme al propósito legislativo. Las agencias solo pueden llevar a cabo las funciones que le han sido encomendadas legislativamente y las que surgen de su actividad o encomienda principal. Sus acciones serán ultravires o nulas, cuando exceden los poderes delegados por la Asamblea Legislativa. El DACo fue creado para vindicar e implementar los derechos de los consumidores. 3 LPRA sec. 341b. No obstante, para adjudicar eficientemente los derechos de los consumidores, el procedimiento administrativo tiene que ser flexible, ágil, rápido y libre de las trabas procesales de los tribunales de justicia. La Asamblea Legislativa confirió autoridad a DACo para regular y atender asuntos específicos en los que hay consumidores involucrados. A tales efectos, aprobó la Ley para Reglamentar el Negocio de Bienes Raíces y la Profesión de Corredor, Vendedor o Empresas de Bienes Raíces, Ley Núm. 10-1994. Su objetivo fue agrupar todas las disposiciones legales relativas a ese negocio de bienes y establecer un nuevo y más estricto cuerpo reglamentario para beneficio de los consumidores, vendedores y corredores de bienes raíces. *Amieiro González v. Pennacle Real Estate,* 173 DPR 363, 372, 374 (2008).

El Art. 23 de la Ley Núm. 10, *supra,* 20 LPRA sec. 3046, faculta expresamente al DACo a supervisar el negocio de bienes raíces en Puerto Rico y entre sus facultades, está contemplado en el inciso (d) considerar y

adjudicar las querellas radicadas por los consumidores al amparo de la Ley Núm.10, *supra.* Según el Art. 31(11), 20 LPRA sec. 3054, prohíbe a toda persona sujeta a sus disposiciones incurrir o inducir a otra persona a incurrir a retener cualquier depósito, cuando la transacción no ha podido llevarse a cabo sin que haya mediado culpa del comprador. Se entenderá que no hay culpa del comprador cuando la institución financiera le denegó el financiamiento porque no cualificó para una transacción de bienes raíces. El inciso g del Art. 23, *supra,* 20 LPRA sec. 3046 (g), expresamente reconoce que la presentación de la querella ante el DACo no limita la responsabilidad del querellado en las acciones judiciales que se lleven en su contra ante cualquier tribunal competente.

### La interpretación del negocio jurídico, según el Código Civil de 2020

El Art. 354 del Código Civil, 31 LPRA sec. 6342, establece las reglas aplicables a la interpretación de los negocios jurídicos sobre la intención de sus otorgantes. Se presume que el negocio jurídico se otorgó de buena fe. Cuando los términos de un negocio jurídico bilateral son claros y no existe duda sobre la intención de las partes, se entenderá en el sentido literal de sus palabras. No obstante, cuando las palabras parecen contrarias a la intención evidente de las partes prevalecerá la intención sobre lo expresado. Por su parte, el Art. 358, 31 LPRA sec. 6346, regula la interpretación de los negocios, cuando sus disposiciones son ambiguas. Si el negocio es oneroso, se interpretará en favor de la mayor proporcionalidad de intereses. Cuando el negocio es bilateral se interpretará de forma desfavorable para quien lo redactó y en favor de la parte que tuvo menor poder en la negociación.

### III.

Luego de ejercer nuestra facultad como autoridad final en cuestiones de interpretación estatutaria, concluimos que la parte recurrente no tiene razón. La Ley Núm. 10, *supra,* concede jurisdicción primaria al DACo para supervisar el negocio de bienes raíces en Puerto Rico y específicamente para considerar y adjudicar las querellas radicadas por los consumidores a su amparo. No obstante, deja claro que la presentación de la querella ante el

DACo no limita la responsabilidad del querellado en las acciones judiciales en su contra. La querella que los compradores presentaron contra las corredoras de bienes raíces por retener ilegalmente el depósito está atada a que se dilucide la controversia existente en el foro judicial sobre su incumplimiento contractual. El vendedor ha planteado en el foro judicial que tiene derecho a retener el depósito, porque condicionó el negocio jurídico a que el comprador pagara el precio de venta en efectivo y que estos le hicieron creer que tenían la capacidad económica. La responsabilidad de las corredoras de bienes raíces no puede determinarse, sin antes dirimir si las partes acordaron que el precio de venta tenía que ser en efectivo o podía ser a través de un financiamiento.

La controversia sobre la intención de los otorgantes es una de naturaleza contractual que corresponde ser atendida por los tribunales. El DACo no tiene jurisdicción para atender ese asunto. La agencia no puede atender ni resolver la querella contra las corredoras de bienes raíces, debido a que en el foro judicial está en controversia, si los compradores perdieron el depósito porque incumplieron sus obligaciones contractuales.

Los compradores también solicitan que revisemos la denegatoria del Tribunal de Primera Instancia a desestimar la demanda por incumplimiento de contrato que el vendedor presentó en su contra.

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. Art. 670 del Código de Enjuiciamiento Civil de 1933, 32 LPRA sec. 3491, hoy conocido como Ley de Recursos Extraordinarios. Véase también *Mun. Caguas v. JRO Construction, Inc.,* 201 DPR 703, 710 (2019); *Medina Nazario v. McNeil Healthcare, LLC,* 194 DPR 723, 728 (2016). Aunque el certiorari se reconoce como un recurso discrecional la sensatez del juzgador se guía por unos límites. Es decir, la discreción judicial no es irrestricta y ha sido definida en nuestro ordenamiento jurídico como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión

justiciera". *Medina Nazario v. McNeil Healthcare LLC,* supra, pág. 729; *Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001).

El primero de estos límites es la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V. Esta dispone en lo pertinente que el recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Superados los criterios de la Regla 52.1 de Procedimiento Civil, venimos llamados a ejercer nuestro criterio sujeto a lo dispuesto en el Reglamento del Tribunal de Apelaciones mediante la Regla 40, 4 LPRA Ap. XXII-B. Esta dispone que el tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

> A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B) Si la situación de los hechos planteada es la más indicada para analizar el problema.
>
> C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Aunque la Regla 52.1 de Procedimiento Civil, *supra,* nos autoriza a expedir un recurso de certiorari para revisar la denegatoria del TPI a una moción de carácter dispositivo, no intervendremos en esta etapa procesal con la denegatoria a desestimar la demanda.

**IV**

Por los fundamentos antes expuestos se confirma la resolución administrativa emitida por el DACo y se deniega el recurso de certiorari.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones